In re T. David **BRATCHER**, Debtor.

William L. Posillico, Plaintiff,

v.

T. David Bratcher, Defendant.

Bankruptcy No. 01–5249–3F7.

Adversary No. 01–265.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 8, 2003.

Jacob A. Brown, Jacksonville, FL, for Plaintiff.

Robert Zipperer, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court for a trial. Upon the evidence submitted at trial and upon the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

In October 1998 Defendant solicited Plaintiff's participation and involvement in a business venture to manufacture and distribute Sun Tunnel skylights. In con-nection with forming the business venture and pursuing the Plaintiff as a potential investor/business partner, Defendant repeatedly represented that he was capable of and would contribute capital to the business venture. These representations were false. On November 30, 1998 Plaintiff loaned $5,000.00 to Defendant and $6,000.00 to Island Design.[2] On December 15, 1998 Plaintiff loaned an additional $468.00 to Defendant. In making these loans, Plaintiff relied on Defendant's oral representations that he was capable of and would contribute to the business venture.

On January 18, 1999 Defendant issued a signed financial statement (the "January 1999 financial statement") representing total assets of $516,397.57 and total liabilities of $67,506.00, for a net worth of $448,891.57. Among Defendant's listed assets were a certificate of deposit in the amount of $15,000.00 at Abbeville Bank, certificates of deposit in the amount of $20,000.00 and $25,000.00 at American Federal Bank, a black pearl collection valued at $125,000.00, motor vehicles valued at $64,500.00, and real property valued at $157,000.00. The January 1999 financial statement also indicated that Defendant's monthly income was $7,866.00, including wages of $6,666.00 ($2,500.00 of which was from Island Design and $4,166.00 of which was from Posillico Builders) and trust income of $1,200.00.

A bank representative from American Federal's successor testified that Defendant owned the $20,000.00 certificate of deposit but that the $25,000.00 certificate of deposit was owned by Ellyn Stein and Maxine Stein, Defendant's girlfriend and

---

1. The Court previously entered Order Denying Plaintiff's Motion for Summary Judgment. The Court incorporates herein portions of its prior Findings of Fact and Conclusions of Law.

2. Plaintiff issued a check to Island Design with the memo section indicating the money was for "product". However, Island Design, Inc., the company formed to represent the parties' business venture, was not incorporated until March 5, 1999.

his girlfriend's mother. Although there was no indication on the January 1999 financial statement that the certificates of deposit were encumbered, Defendant testified the certificates of deposit secured loans obtained from the bank. On August 11, 2000 Defendant closed out the $20,000.00 certificate of deposit and used the proceeds to pay off the loan securing it.

Defendant testified he pawned and redeemed his black pearl collection numerous times between 1998 and 2000. Defendant testified that he did not retain the pawn receipts after he redeemed the pearls. Defendant testified that he last pawned the pearls at B & B Pawn in Anderson, South Carolina sometime prior to June 2000. In exchange he received between $7,500.00 and $10,000.00. Defendant testified he used the money to pay bills and live on.

On February 2, 1999 Plaintiff loaned $85,590.00 to Defendant. On February 4, 1999 Plaintiff loaned $1,000.00 to Defendant. In making these loans, Plaintiff relied on the January 18, 1999 financial statement.

On or about March 5, 1999 Plaintiff and Defendant incorporated Island Design, Inc. ("Island Design") in the state of South Carolina. Plaintiff and Defendant were the only shareholders in Island Design, each having a fifty percent (50%) ownership interest. Defendant also served as an officer and director of Island Design at all pertinent times. Island Design became a regional distributor and installer of Sun Tunnel skylights.

On March 19, 1999 Defendant issued a second financial statement (the "March 1999 financial statement") representing total assets of $461,650.00 and total liabilities of $67,506.00, for a net worth of $394,144.00.

On or about June 7, 1999 Island Design received a revolving loan from Upper Savannah Council of Governments ("Upper Savannah") for the purpose of expanding its business. Sam Leaman, Upper Savannah's representative, testified that Upper Savannah relied on Defendant's financial statements in making the loan. As part of the financing, Island Design issued a promissory note, which was personally guaranteed by both Plaintiff and Defendant, in favor of Upper Savannah in the amount of $150,000.00. Plaintiff testified he relied on Defendant's financial statements in guaranteeing the promissory note in favor of Upper Savannah.

Shortly thereafter, Island Design received a $75,000.00 advance on the revolving loan. Plaintiff wrote himself a check for $75,000.00 from Island Design as repayment toward the $85,590.00 loan made to Defendant on February 2, 1999. Plaintiff testified that he re-invested $40,000 of that in the business, with $15,000.00 payable to Island Design on June 11, 1999 and $25,000.00 loaned directly to Defendant on June 14, 1999. Plaintiff testified he relied on Defendant's financial statements in making these loans.

Plaintiff testified he reasonably relied on Defendant's financial statements in making loans to Defendant and Island Design and in personally guaranteeing the obligation to Upper Savannah. He testified that he observed that Defendant's family was wealthy and that Defendant lived in a nice home and drove a nice car. He also testified he was under the impression that Defendant had real estate holdings because the parties used an attorney who had represented Defendant in a real estate transaction. Additionally, he testified he was reassured by the fact that Defendant was submitting the financial statements to Upper Savannah, an established lender, to obtain the $150,000.00 loan. Defendant

acknowledged he established a level of trust with Plaintiff.

On January 7, 2000 Plaintiff and Defendant entered into an agreement (the "Stock Purchase Agreement") pursuant to which Defendant agreed to: (a) pay $57,000.00 and provide certain inventory to Plaintiff and (b) cause Plaintiff to be released from his personal guaranty to Upper Savannah, in exchange for Plaintiff's agreement to convey his interest in Island Design to Defendant. Defendant represented that he had the money to perform under the Stock Purchase Agreement and that he would do so. Shortly thereafter, Island Design lost its franchise agreement. Defendant breached the Stock Purchase Agreement by failing to perform in accordance with its terms. Plaintiff still has his shares in Island Design.

Defendant received the $75,000.00 balance of the revolving loan in an individual capacity. Defendant testified he used a portion of the money as a down payment on a building purchased for his sole proprietorship and for further operational expenses.

On or about August 7, 2000 Plaintiff filed a complaint against Defendant and Island Design in the Court of Common Pleas, Eleventh Judicial Circuit in the State of South Carolina, County of McCormick for breach of contract, breach of fiduciary duty, fraud, and unfair trade practices, styled as: *Posillico v. Bratcher and Island Design, Inc.*, Case No. 00–CP–35–66.

On or about May 3, 2001 Upper Savannah filed a complaint in the Court of Common Pleas, Eleventh Judicial Circuit in the State of South Carolina, County of McCormick against Plaintiff and Defendant based upon their guaranties, styled as: *Upper Savannah Council of Governments v. Posillico, et al.*, Case No. 01–CP–35–50.

On June 9, 2001 Defendant filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On his bankruptcy schedules Defendant listed total assets of $29,950.00 and total liabilities of $486,232.71 for a negative net worth of $456,282.71. Of the total liabilities listed, $393,000.00 is owed to Defendant's relatives or to his girlfriend's relatives. These liabilities are not listed in Defendant's January and March 1999 financial statements. Defendant's Statement of Financial Affairs provides that he had no income in 1999 or 2000.

On July 31, 2001 Plaintiff conducted a 2004 examination of the Defendant. At the 2004 examination, Defendant testified that he had no interest in the following property which he included in his January 1999 and March 1999 financial statements:

- a 1999 Ford Explorer valued at $36,000.00;
- a 1992 Mitsubishi Montero valued at $8,500.00;
- a one third (1/3) interest in a house and lot located on 602 Robinhood Drive in Seneca, South Carolina valued at $35,000.00;
- real property on 207 Secession in Abbeville, South Carolina valued at $20,000.00;
- real property on 401 Magazine Street in Abbeville, South Carolina valued at $45,000.00; and
- real property on 106 Phillips Street in Abbeville, South Carolina valued at $10,000.00.

Accordingly, Defendant's financial statements contained false representations as to $154,500.00 worth of assets which Defendant concedes he has no interest in. Defendant also failed to represent that his pearl collection had been pawned. Finally, Defendant falsely represented that he owned the $25,000.00 certificate of deposit and failed to disclose that the $20,000.00

certificate of deposit was fully encumbered.[3] Accordingly, Defendant, through his sworn financial statements, falsely represented his net worth to Plaintiff by a minimum amount of $324,500.00 out of listed respective net worths of $448,891.57 and $394,144.00.

On Schedule A of his bankruptcy schedules Defendant listed a one-half ownership interest in a lot in Savannah Lakes Village, South Carolina and an ownership interest in 2 other lots in Savannah Lakes Village. Plaintiff contends that Defendant failed to list his ownership interest in two other parcels of real property in South Carolina, the first of which is located at 111 Phillips Street in Abbeville, South Carolina (the "Phillips Street property"). Plaintiff's Composite Exhibit 2 contains a title abstract of the Phillips Street property. The title abstract reflects the following: In 1994 Nancy Stokes, Defendant's grandmother, transferred her fee simple interest in the Phillips Street property to Jimmie Stokes Bratcher, Defendant's mother. Nancy Stokes retained a life estate therein. On July 26, 1999 Nancy Stokes transferred her life estate interest to Defendant. Composite Exhibit 2 also contains a warranty deed effectuating the transfer from Nancy Stokes to Defendant. The warranty deed was recorded on December 14, 1999. Based upon the foregoing, it appears that Defendant owns a life estate in the Phillips Street property for the life of Nancy Stokes. However, Defendant testified that the recording of the deed was ineffective because his grandmother has Alzheimer's disease and was unable to convey her interest in the property without the consent of Defendant's mother, who has a power of attorney.

Plaintiff also contends that Defendant failed to list his ownership of a parcel of real property in McCormick, South Carolina upon which is situated a warehouse (the "warehouse property"). Defendant testified he did not list the warehouse property on Schedule A because he believed he had no ownership interest therein since the property was in the process of being or had already been foreclosed upon. Defendant did list the property on his Statement of Financial Affairs as the subject of a foreclosure action.

In anticipation of the foreclosure sale of the warehouse property, the mortgagee requested that Defendant remove certain personal property from the warehouse. Defendant did not list the property, which he testified was "junk" and was worth less than $500.00, on his bankruptcy schedules.

As of the Petition Date, Defendant was indebted to Plaintiff for the following:

### Loans made prior to the issuance of the financial statements

- November 30, 1998 check to Island Design in the amount of $6,000.00
- November 30, 1998 check to Defendant in the amount of $5,000.00
- December 15, 1998 check to Defendant in the amount of $468.00

### Loans made subsequent to the issuance of the financial statement(s)

- February 2, 1999 check to Defendant in the amount of $85,590.00 reduced by the $75,000.00 received by Plaintiff from advance on Upper Savannah loan ($10,590.00) [4]

3. The Court was not presented with any evidence as to the disposition of the $15,000.00 certificate of deposit.

4. Plaintiff mistakenly asserts that Defendant owes him $50,590.00 as a result of the February 2, 1999 loan. Plaintiff arrived at that figure by reducing the $85,590.00 by the $75,000.00 check Plaintiff wrote to himself after the receipt of the first installment from Upper Savannah and then adding to that figure the $40,000.00 Plaintiff re-loaned to Is-

- February 4, 1999 check to Defendant in the amount of $1,000.00
- June 11, 1999 check to Island Design in the amount of $15,000.00
- June 14, 1999 check to Defendant in the amount of $25,000.00

### Damages resulting from Defendant's breach of the Stock Purchase Agreement

- $57,000.00

Plaintiff asserts that the debt owed him by Defendant should be excepted from Defendant's discharge. Plaintiff also seeks to except from Defendant's discharge any amounts for which Plaintiff is found to be liable to Upper Savannah as a result of Plaintiff's guaranty of the revolving loan. Alternatively, Plaintiff objects to Defendant's discharge.

### CONCLUSIONS OF LAW

■ While the fundamental goal of the Bankruptcy Code is to provide the honest debtor with a fresh start, such a policy must be tempered by the need to prevent dishonest debtors from using the law as a shield. *See Jones v. J.G. Wentworth S.S.C. Ltd. Partnership (In re Berghman)*, 235 B.R. 683, 692 (Bankr.M.D.Fla.1999) (citing *Bracco v. Pollitt (In re Pollitt)*, 145 B.R. 353, 355 (Bankr.M.D.Fla.1992)). Accordingly, under the circumstances prescribed in § 523 of the Bankruptcy Code, certain debts will be excepted from a debtor's discharge. *See id.*

### 11 U.S.C. § 523(a)(2)(A)

Initially Plaintiff requested that the Court except all of the debt owed him by Defendant, as well as Plaintiff's debt to Upper Savannah resulting from the personal guaranty, from Defendant's discharge pursuant to § 523(a)(2)(A). Section 523(a)(2)(A) provides that a debt for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition is not excepted from a Debtor's discharge." (West 2002).

■ In order to except a debt from discharge under 11 U.S.C. § 523(a)(2)(A), Plaintiff must prove that: (1) Defendant made a false representation with the purpose and intent of deceiving Plaintiff; (2) Plaintiff justifiably relied upon the representation; and (3) Plaintiff sustained a loss as a result of the representation. *Lang v. Vickers (In re Vickers)*, 247 B.R. 530, 534 (Bankr.M.D.Fla.2000). Additionally, although few cases explicitly spell out such a requirement, it is clear that the debt sought to be excepted from discharge must relate to the provision of money, property, or services "to the extent obtained by" a debtor's fraudulent conduct. In other words, a debtor must have obtained money, property, or services as a result of his fraudulent conduct. The Supreme Court spelled out such a requirement in *Cohen v. Hilda de la Cruz (In re Cohen)*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), a case addressing the issue of whether an award of treble damages was excepted from discharge pursuant to § 523(a)(2)(A). The Court noted that "to the extent obtained by" means that "the share of money, property, etc., that is obtained by fraud gives rise to a non-dis-

land Design and Defendant. However, Plaintiff testified that the $40,000.00 he re-loaned to Island Design and Defendant was represented by the June 11, 1999 check to Island Design in the amount of $15,000.00 and the

June 14, 1999 check to Defendant in the amount of $25,000.00. Accordingly, Plaintiff should not have included the $40,000.00 in the calculation of Defendant's debt to Plaintiff resulting from the February 2, 1999 loan.

chargeable debt. Once it is established that specific money or property is obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." *Id.* at 218, 118 S.Ct. 1212.

In its prior Findings of Fact and Conclusions of Law, the Court held that the funds expended prior to the issuance of the financial statements were not excepted from Defendant's discharge pursuant to § 523(a)(2)(A) because that section specifically excepts statements respecting a debtor's financial condition. Additionally, the Court noted that Plaintiff's argument that: 1) the debt resulting from the loans made after the issuance of the January and March 1999 financial statements and 2) the portion of the debt resulting from Plaintiff's personal guaranty of the obligation to Upper Savannah should be excepted from discharge pursuant to § 523(a)(2)(B), precluded the application of § 523(a)(2)(A) to that portion of the debt. In other words, paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive. 2 Lawrence P. King, Collier Bankruptcy Manual ¶ 523.07[1] (3d ed.2002). The remaining issue was whether Defendant's liability to Plaintiff arising from Defendant's breach of the Stock Purchase Agreement was excepted from Defendant's discharge pursuant to § 523(a)(2)(A).

The Court held that genuine issues of material fact existed as to whether Defendant made a false representation, whether he did so with the purpose and intent to deceive Plaintiff, whether Plaintiff justifiably relied on the representation, and whether Plaintiff suffered damages as a result. Plaintiff alleges that Defendant falsely represented that he could and would perform under the Stock Purchase Agreement and that Defendant's false representations were made with the purpose and intent to deceive Plaintiff. Plaintiff alleges that Defendant never intended to pay him the $57,000.00. Plaintiff contends that he was damaged by not receiving the $57,000.00 and having to defend the lawsuit brought by Upper Savannah.

■ Even if: 1) Defendant falsely represented and fraudulently misrepresented his intent and ability to perform under the Stock Purchase Agreement, 2) Plaintiff justifiably relied upon those representations, and 3) Plaintiff was damaged by not receiving the $57,000.00 and having to defend the lawsuit brought by Upper Savannah, Defendant did not obtain anything as a result of thereof. Because Plaintiff failed to establish that Defendant obtained money, property, services, etc. as a result of the Stock Purchase Agreement, the Court will not except the $57,000.00 purchase price of Plaintiff's Island Design stock and Plaintiff's remaining liability resulting from the personal guaranty of the Upper Savannah loan from Defendant's discharge pursuant to § 523(a)(2)(A).

### 11 U.S.C. § 523(a)(2)(B)

Section 523(a)(2)(B) provides:
A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive;
(West 2002).

The Court previously addressed the dischargeability, pursuant to § 523(a)(2)(B), of the funds Plaintiff expended after the

issuance of Defendant's written financial statements as well as the debt arising from Plaintiff's guarantee of the obligation to Upper Savannah. The Court found that Defendant published materially false financial statements with the purpose and intent to deceive Plaintiff. However, the Court found there was a genuine issue as to whether Plaintiff reasonably relied on the financial statements when he loaned money to Defendant and Island Design and when he guaranteed the obligation to Upper Savannah.

■ Whether a creditor's reliance is reasonable is a question of fact which is to be judged in light of the totality of the circumstances. *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 260 (5th Cir.1993). A bankruptcy court may consider, among other things: 1) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; 2) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; 3) and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations. *Id.*

■ Although Defendant did not file a response to Plaintiff's Motion for Summary Judgment, Defendant contended at trial that Plaintiff not only did not reasonably rely on Defendant's financial statements, but that he did not rely on the financial statements at all. The Court finds that Plaintiff relied on Defendant's financial statements when he loaned money to Defendant and Island Design and when he personally guaranteed the obligation to Upper Savannah. Plaintiff's testimony, corroborated by documentary evidence, establishes that Plaintiff had neither invested substantial sums in the business nor personally guaranteed the loan to Upper Savannah prior to the issuance of the financial statements. Plaintiff

also testified that he would not have proceeded in business with Defendant if he had known of the undisclosed liabilities and the exaggerated assets on Defendant's financial statements. Additionally, the Court finds that Plaintiff's reliance on Defendant's financial statements was reasonable. Plaintiff testified that he inquired about Defendant within the community and was told that Defendant was "pretty reputable." Plaintiff also observed that Defendant's family was wealthy and that Defendant lived in a nice home and drove a nice car. Plaintiff was under the impression that Defendant had real estate holdings because the parties used an attorney who had represented Defendant in a real estate transaction. Finally, Plaintiff's knowledge that Defendant was submitting the financial statements to Upper Savannah, an established lender, to obtain the $150,000.00 loan further supports a finding that Plaintiff's reliance was reasonable. Accordingly, the Court finds that Defendant obtained the following funds from Plaintiff by publishing false financial statements with the intent to deceive Plaintiff and will therefore except them from Defendant's discharge pursuant to § 523(a)(2)(B):

- $10,590.00 (calculated by reducing the February 2, 1999 check to Defendant in the amount of $85,590.00 by the $75,000.00 first installment of the Upper Savannah loan)
- February 4, 1999 check to Defendant in the amount of $1,000.00
- June 11, 1999 check to Island Design in the amount of $15,000.00
- June 14, 1999 check to Defendant in the amount of $25,000.00.

***Calculation of Portion of Plaintiff's Personal Guarantee to Upper Savannah to be Excepted from Defendant's discharge***

It is clear that Defendant induced Plaintiff to personally guaranty the Upper Sa-

vannah loan, from which he ultimately received $75,000.00 in a personal capacity, by publishing the materially false financial statements with the intent to deceive Plaintiff. It is also clear that Plaintiff reasonably relied on the financial statements when he agreed to personally guarantee the loan. Nonetheless, the Court will not except from Defendant's discharge the entire amount determined to be owed by Plaintiff to Upper Savannah as a result of his personal guarantee of the $150,000.00 promissory note. Plaintiff acknowledged that he received the first $75,000.00 installment of the loan. He testified that he re-invested $40,000 of that in the business, with $15,000.00 payable to Island Design on June 11, 1999 and $25,000.00 loaned directly to Defendant on June 14, 1999. As the Court has already excepted those amounts from Defendant's discharge, excepting them as a portion of the personal guarantee would result in a windfall to Defendant. Additionally, because the Court was presented with no evidence as to the disposition of the remaining $35,000.00 which Plaintiff received as part of the first installment, the Court will not except that amount from Defendant's discharge. The Court will only except from Defendant's discharge any amount determined to be owed by Plaintiff to Upper Savannah as a result of the second $75,000.00 installment on the Upper Savannah loan which Defendant received in an individual capacity.[5]

### OBJECTION TO DISCHARGE

Plaintiff also objects to Defendant's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).[6] Sections 727(a)(2), (a)(3), (a)(4) and (a)(5) respectively provide:

(a) [t]he court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

---

5. As the Court noted, Upper Savannah has a lawsuit pending against Plaintiff and Defendant in South Carolina state court resulting from their personal guaranties of the promissory note. The Court is not aware of the disposition of that proceeding.

6. Although Plaintiff framed his objection to Defendant's discharge as a request for alternative relief, in light of the fact that the Court did not except all of Defendant's debt to Plaintiff from Defendant's discharge, the Court finds it necessary to address Plaintiff's Objection to Defendant's discharge.

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

 The Bankruptcy Code favors discharge of the honest debtor's debts and provisions denying this discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. *See Cohen v. McElroy (In re McElroy)*, 229 B.R. 483, 487 (Bankr. M.D.Fla.1998). However, there are limitations on the right to a bankruptcy discharge. Federal Rule of Bankruptcy Procedure 4005 provides that the initial burden of proof on an objection to discharge lies with the plaintiff. Fed. R.Bankr.P. 4005. A plaintiff bears the initial burden of proving, by a preponderance of the evidence, that a debtor's discharge should be denied. *See Grogan v. Garner*, 498 U.S. 279, 285–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir.1995); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984); *Manhattan Leasing Sys., Inc. v. Goblick (In re Goblick)*, 93 B.R. 771, 775 (Bankr.M.D.Fla.1988). However, once a plaintiff meets the initial burden, the debtor has the ultimate burden of persuasion. *See id.* That is, the debtor must bring forth "enough credible evidence to dissuade the court from exercising its discretion to deny the debtor's discharge based on the evidence presented by the objecting party." *Law Offices of Dominic J. Salfi, P.A. v. Prevatt (In re Prevatt)*, 261 B.R. 54, 58 (Bankr. M.D.Fla.2000).

### *11 U.S.C. § 727(a)(2)(A)*

 Under § 727(a)(2)(A), the objecting party must prove by a preponderance of the evidence that: (1) a transfer occurred; (2) the transfer was of debtor's property; (3) the transfer was within one year of the petition, and (4) the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. *See Williamson Const., Inc. v. Ross (In re Ross)*, 217 B.R. 319, 323 (Bankr.M.D.Fla. 1998) (citations omitted). Additionally, the transfer must have reduced the assets available to creditors. *Chicago Title Insurance Company, Inc. v. Mart (In re Mart)*, 87 B.R. 206, 209 (Bankr.M.D.Fla. 1988). Plaintiff fails to set forth with specificity any alleged transfers made by Defendant in the year prior to the filing of the petition. However, a review of the transcript reveals a line of questioning in which Plaintiff's counsel asks Defendant about the pawning of his pearl collection and the cashing in of the $20,000.00 and $25,000.00 certificates of deposit. Defendant testified (and Plaintiff presented no evidence to the contrary) that he pawned his pearl collection more than a year prior to the filing of the petition. Additionally, although it is clear that Defendant cashed in the $20,000.00 certificate of deposit, the only evidence before the Court is that he used the proceeds to pay off a loan securing it. There is no evidence that Defendant's cashing in of the certificate of deposit reduced the assets available to creditors. Finally, Defendant did not own the $25,000.00 certificate of deposit. Accordingly, the Court will overrule Plaintiff's objection to Defendant's discharge pursuant to § 727(a)(2)(A).

### *11 U.S.C. § 727(a)(3)*

 The purpose of Section 727(a)(3) is to give creditors and the bank-

ruptcy court complete and accurate information concerning the status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See PNC Bank v. Buzzelli (In re Buzzelli)*, 246 B.R. 75, 95 (Bankr.W.D.Pa.2000) (citing *Meridian Bank v. Alten (In re Alten)*, 958 F.2d 1226 (3rd Cir.1992)). This statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. *See Meridian Bank*, 958 F.2d at 1230 (citations omitted). A creditor objecting to a discharge under § 727(a)(3) has the initial burden of proving "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* at 1232. Once a creditor shows that a debtor's records are inadequate, the burden shifts to the debtor to justify such inadequacies. *See id.* at 1233.

■■■■ Plaintiff contends that Defendant's failure to preserve records concerning the pawning of his black pearl collection and "otherwise being able to account for them" warrants the denial of his discharge pursuant to § 727(a)(3). Although the Court finds that Defendant's failure to retain pawn receipts constitutes a failure to maintain and preserve adequate records, such a failure did not make it impossible to ascertain Defendant's financial condition and material business transactions. Defendant testified as to the time, place, and amount of the final pawn of the pearls. Such information is easily subject to verification or corroboration. Accordingly, the Court will overrule Plaintiff's objection to Defendant's discharge pursuant to § 727(a)(3).

*11 U.S.C. § 727(a)(4)*

■■■■ Section 727(a)(4)(A) provides for denial of a debtor's discharge if he "knowingly and fraudulently, in or in connection with the case-made a false oath or account." 11 U.S.C. § 727(a)(4)(A). The purpose of § 727(a)(4)(A) is to ensure that "that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction. Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir.1987). Section 727(a)(4)(A) requires a court to find that the debtor knowingly made a false oath that was both fraudulent and material. *See Swicegood v. Ginn (In re Ginn)*, 924 F.2d 230 (11th Cir.1991). To be fraudulent, the oath must be made with "a knowing intent to defraud creditors." *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 714 (Bankr.N.D.Ga. 1996) (citing *Swicegood*, 924 F.2d at 232). For a false oath to be considered material, it must be shown that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik*, 748 F.2d at 618 (citations omitted). Although a single omission is generally insufficient to support an objection to discharge, a series of omissions may create a pattern which demonstrates the debtor's reckless disregard for the truth. *See Jones v. Phillips (In re Phillips)*, 187 B.R. 363, 369 (Bankr.M.D.Fla.1995) citing *In re Clawson*, 119 B.R. 851 (Bankr.M.D.Fla. 1990). From this pattern of behavior, fraudulent intent may be presumed. *See id.* citing *In re Sausser*, 159 B.R. 352 (Bankr.M.D.Fla.1993). A creditor object-

ing to discharge has the burden of producing sufficient evidence to "give rise to a reasonable inference that the debtor failed to disclose information with the intent to hinder the investigation of the trustee and creditors." *Prevatt,* 261 B.R. at 59 (citing *Chalik,* 748 F.2d at 619.) The burden then shifts to the debtor to overcome the inference with credible evidence.

■ Plaintiff contends that the following warrant denial of Defendant's discharge pursuant to § 727(a)(4)(A): 1) Defendant's failure to list on his bankruptcy schedules his ownership interest in the Phillips Street property 2) Defendant's failure to list on his bankruptcy schedules his ownership interest in the warehouse property, 3) Defendant's failure to list on his bankruptcy schedules his ownership interest in the personal property located in the warehouse, and 4) Defendant's indication on his Statement of Financial Affairs that he had no income during the two years prior to the filing of the petition. Because it appears that Defendant owns a life estate in the Phillips Street property, his failure to list such an interest on Schedule A is a false oath. However, in light of Defendant's confusion and uncertainty as to the effect of the conveyance, the Court does not find that Defendant's failure to list his interest therein was done with a knowing intent to defraud creditors. Additionally, given Defendant's testimony that he did not believe he owned the warehouse property because it was in foreclosure and the fact that he did include the foreclosure proceeding on his Statement of Financial Affairs, the Court does not find that Defendant's failure to include his interest in the warehouse property on Schedule A was the result of a knowing intent to defraud creditors. Defendant testified that the $6,666.00 monthly wages

he listed on the January 1999 financial statement was based upon the anticipated success of the business. It is abundantly clear that the business' success was just that, anticipated. Plaintiff presented no evidence that Defendant received income from employment or from the operation of a business during 1999 and 2000.[7] The Court is therefore unable to find that Defendant's indication on his Statement of Financial Affairs that he received no income from employment or from the operation of a business during 1999 and 2000 constitutes a false oath. Additionally, the Court does not find that Defendant failed to list the $1,200.00 monthly subsidy received from his family during 1999 and 2000 with a knowing intent to defraud creditors. Finally, Defendant's concession that he failed to include the personal property located in the warehouse on his schedules and his subsequent lack of an explanation therefor trouble the Court. However, the Court finds that this single omission is not sufficient to deny Defendant's discharge. Accordingly, the Court will deny Plaintiff's objection to Defendant's discharge pursuant to § 727(a)(4).

### 11 U.S.C. § 727(a)(5)

■ Finally, Plaintiff objects to Defendant's discharge pursuant to § 727(a)(5). A prima facie case under § 727(a)(5) has been held to exist where a creditor shows that a debtor has listed assets in his schedules at a lower figure than he has previously presented himself to be worth, or where there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy. *See PNC Bank,* 246 B.R. at 116 (quoting *Ernst v. Walton (In re Walton),* 103 B.R. 151, 155 (Bankr.S.D.Ohio 1989)). As with § 727(a)(3), the burden shifts to a debtor

---

**7.** Indeed, Plaintiff is the only party besides Defendant in a position to know whether De-

fendant earned wages from Island Design and Posillico Builders during 1999 and 2000.

to explain losses or deficiencies once evidence of disappearance of substantial assets is introduced. *See id.* Other than tracking the language of the statute, Plaintiff fails to set forth any specific allegations which warrant a denial of Defendant's discharge pursuant to § 727(a)(5). Presumably Plaintiff is referring to Defendant shifting assets, liabilities, and net worth. However, as the Court has previously found, Defendant falsely represented his net worth on his financial statements by a minimum amount of $324,500.00 out of listed respective net worths of $448,891.57 and $394,144.00. There was no loss of assets or deficiency of assets between March 1999 and the filing of the bankruptcy petition. With the exception of the black pearl collection, Defendant either overstated the value of certain assets or never owned them to begin with. Accordingly, the Court will overrule Plaintiff's objection to Defendant's discharge pursuant to § 727(a)(5).

### CONCLUSION

The Court will not except any of Defendant's debt to Plaintiff or Plaintiff's liability resulting from his personal guaranty of the Upper Savannah loan from Defendant's discharge pursuant to § 523(a)(2)(A). Pursuant to § 523(a)(2)(B), the Court will except the following amounts, totaling $51,590.00 from Defendant's discharge:

- $10,590.00 (calculated by reducing the February 2, 1999 check to Defendant in the amount of $85,590.00 by the $75,000.00 first installment of the Upper Savannah loan)
- February 4, 1999 check to Defendant in the amount of $1,000.00
- June 11, 1999 check to Island Design in the amount of $15,000.00
- June 14, 1999 check to Defendant in the amount of $25,000.00

The Court will also except pursuant to § 523(a)(2)(B) any amount determined to be owed by Plaintiff to Upper Savannah as a result of the second $75,000.00 installment on the Upper Savannah loan from Defendant's discharge. Finally, the Court will overrule Plaintiff's objection to Defendant's discharge. The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.