**In re Peter F. MOERITZ, Debtor.**

**Felicia S. Turner, United States Trustee–Region 21, Plaintiff,**

v.

**Peter F. Moeritz, Defendant.**

**Bankruptcy No. 8:02–BK–25278–PMG. Adversary No. 8:03–AP–199–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 16, 2004.

180

Denise E. Barnett, Office of the United States Trustee, Tampa, FL, for plaintiff.

Rodney L. Dillon, Sarasota, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The United States Trustee (UST) commenced this adversary proceeding by filing a Complaint Objecting to the Entry of the Debtor's Discharge. In the Complaint, the UST asserts that the Debtor's discharge should be denied (1) pursuant to § 727(a)(2)(A), based on the Debtor's fraudulent transfer of property; (2) pursuant to § 727(a)(2)(B), based on the Debtor's fraudulent concealment of property; (3) pursuant to § 727(a)(4)(A), based on the Debtor's false oaths; and (4) pursuant to § 727(a)(4)(D), based on the Debtor's withholding of information from the Chapter 7 Trustee.

In response, the Debtor acknowledges that certain errors and omissions appeared on his bankruptcy schedules. The Debtor contends, however, that the errors were not the result of any intent to hinder, delay, or defraud his creditors. On the contrary, the Debtor asserts that he did not initially disclose his equitable interest in certain assets because he did not understand the nature of that interest, that he promptly corrected the errors upon learning of the mistake, and that he has purged his nondisclosures by paying the Chapter 7 Trustee the sum of $23,912.00.

## Background

The Debtor is a real estate agent in Sarasota, Florida. In 2002, he was employed as an agent for Coldwell Banker.

On September 10, 2002, the Debtor met with a bankruptcy attorney regarding the potential filing of a chapter 7 bankruptcy case. (UST's Exhibit 1). The Debtor received a bankruptcy worksheet at the initial meeting, but did not immediately complete the form.

Two days later, on September 12, 2002, a checking account was opened at the Independence Bank in Ohio in the name of Oliver Moeritz (the Ohio Account). Oliver Moeritz is the Debtor's son. The account was opened with an initial deposit in the amount of $4,000.00. (UST's Exhibit 3). The Debtor testified that the initial deposit was contributed by his son. (Transcript of Final Evidentiary Hearing, pp. 22, 41, 44).

On October 9, 2002, the amount of $8,267.02 was deposited into the Ohio Account; on October 25, 2002, the amount of $6,332.45 was deposited into the Ohio Account; and on November 1, 2002, the amount of $7,596.13 was deposited into the Ohio Account. (UST's Exhibit 3). The deposits represent real estate commissions that had been previously earned by the Debtor, and that were paid to the Debtor by Coldwell Banker between October 3 and October 25, 2002. (UST's Exhibit 2).

The Debtor testified that he transferred the funds to the Ohio Account so that his son could pay his (the Debtor's) bills and handle his financial affairs for him. (Transcript, pp. 22, 42).

On or about November 4, 2002, three days after the last deposit into the Ohio Account, the Debtor traded his 1986 BMW for a 2000 Toyota. The purchase price for the Toyota, after credit for the trade-in value of the BMW, was $14,407.87. The purchase price was paid by a check written on the Ohio Account. (UST's Exhibit 3). The Certificate of Title to the Toyota was issued to the Debtor's son, Oliver Moeritz, on November 21, 2002. (UST's Exhibit 4). The Debtor testified, however, that he purchased the vehicle for his own use in connection with his occupation as a realtor, and that he was in possession of the car. (Transcript, pp. 27, 38–39, 43, 47).

One month after the purchase of the Toyota, on December 20, 2002, the Debtor filed his petition under chapter 7 of the Bankruptcy Code. On his "Schedule B—Personal Property," the Debtor represented that he owned no bank accounts or other financial accounts, no interest in any business, and no vehicles. Additionally, on his Statement of Financial Affairs, the Debtor represented that he had made no gifts or other transfers within the one-year period prior to the filing of the petition, and that he had owned no interest in any business within the six-year period prior to the bankruptcy. The Schedules and Statement of Financial Affairs were signed on December 18, 2002.

On March 24, 2003, the UST filed a Complaint Objecting to the Entry of the Debtor's Discharge. (Doc. 1). In the Complaint, the UST requested that the Court deny the Debtor's discharge pursuant to § 727(a)(2)(A), § 727(a)(2)(B), § 727(a)(4)(A), and § 727(a)(4)(D) of the Bankruptcy Code.

In May and June of 2003, approximately two months after the Complaint was filed, the Debtor paid the total sum of $23,912.00 to the Chapter 7 Trustee. The amount paid to the Trustee represents the amount transferred to the Ohio Account in October and November of 2002, as well as the nonexempt portion of the personal property scheduled by the Debtor.

The Debtor's chapter 7 case has been fully administered, dividends have been disbursed to creditors, and the Chapter 7 Trustee has filed her Final Account.

## Discussion

Section 727(a) of the Bankruptcy Code provides in part:

**11 U.S.C. § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . . .

■ (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and

papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a). Generally, "section 727(a) of the Bankruptcy Code may be utilized to deny a discharge to dishonest debtors, however unfortunate." *In re Matus*, 303 B.R. 660, 670 (Bankr.N.D.Ga. 2004).

### A. Burden of proof

■ Rule 4005 of the Federal Rules of Bankruptcy Procedure provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." F.R.Bankr.P. 4005. Consequently, it is clear that the "plaintiff bears the initial burden of proving, by a preponderance of the evidence, that a debtor's discharge should be denied." *In re Bratcher*, 289 B.R. 205, 217 (Bankr.M.D.Fla.2003)(citing *Grogan v. Garner*, 498 U.S. 279, 285–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Hawley*, 51 F.3d 246, 249 (11th Cir.1995); *In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984); *In re Goblick*, 93 B.R. 771, 775 (Bankr. M.D.Fla.1988)).

■ "However, once a plaintiff meets the initial burden, the debtor has the ultimate burden of persuasion.... That is, the debtor must bring forth 'enough credible evidence to dissuade the court from exercising its discretion to deny the debtor's discharge based on the evidence presented by the objecting party.'" *In re Bratcher*, 289 B.R. at 217 (quoting *In re Prevatt*, 261 B.R. 54, 58 (Bankr.M.D.Fla. 2000)).

### B. Section 727(a)(2)

■ To establish a cause of action under § 727(a)(2) of the bankruptcy Code, a plaintiff must establish "(i) a transfer or concealment of property of the debtor or estate, (ii) improper intent, and (iii) an improper act that occurred either during the one year preceding the filing or post-petition." *In re Matus*, 303 B.R. at 672.

■ In this case, the UST has demonstrated that the Debtor transferred property in which he had an interest within the one-year period immediately prior the filing of his bankruptcy petition, and that he concealed his interest in the property after the filing.

The UST proved, for example, that the Debtor had previously earned real estate commissions in the total amount of $21,998.60, and that the commissions were paid to the Debtor in October of 2002. (UST's Exhibit 2). Accordingly, the commissions were property of the Debtor.

The UST also established that the commissions were deposited into the Ohio Account, which was a checking account opened solely in the name of the Debtor's son. The deposits occurred on October 9, 2002, October 25, 2002, and November 1, 2002. (UST's Exhibit 3).

Additionally, the UST also established that the Debtor traded his vehicle and purchased a 2000 Toyota in November of 2002. The funds in the Ohio Account, including the proceeds of the Debtor's commissions, were used to purchase the Toyota, which was then titled in the Debtor's son's name.

Consequently, the Debtor transferred property to his son within the year preceding the filing of his bankruptcy petition, by virtue of the deposit of his commissions into his son's checking account, and also by virtue of the issuance of title to the Toyota in his son's name (§ 727(a)(2)(A)). Further, the Debtor did not disclose either the Ohio Account or the Toyota when he filed his bankruptcy case, and therefore concealed his interest in those assets postpetition (§ 727(a)(2)(B)).

## C. Section 727(a)(4)(A)

 "Section 727(a)(4)(A) requires a court to find that the debtor knowingly made a false oath that was both fraudulent and material." *In re Bratcher,* 289 B.R. at 218. "Knowing failure to disclose information on schedules violates § 727(a)(4)(A) and empowers the court to deny discharge under that section." *In re Prevatt,* 261 B.R. at 59.

 In this case, the Debtor has made the following admissions:

Defendant failed to disclose that on the Petition Date he had a bank account with SunTrust Bank in Florida, identified by account number 0084003102882 (the "Florida Account") and an equitable interest in a bank account with Independence Bank of Ohio, identified by account number 214236 (the "Ohio Account").

. . . . .

Defendant failed to disclose an investment account with E–Trade, identified by account number 1179–1210.

(Joint Pretrial Statement, Statement of Admitted Facts, p. 5). The Debtor also acknowledged his previous involvement in two business ventures (Live, Inc. and Live Image Mail, Inc.) that were not disclosed on his Schedules or Statement of Financial Affairs.

Most significantly, it is clear that the Debtor did not disclose the transfer of his real estate commissions to his son, or his equitable interest in the 2000 Toyota purchased one month before the bankruptcy petition was filed. (See "Schedule B— Personal Property and Statement of Financial Affairs"). The Debtor made false oaths in connection with his case within the meaning of § 727(a)(4)(A) of the Bankruptcy Code.

## D. Intent

The primary issue in this case is whether the Debtor engaged in the transfers and nondisclosures described above with the intent to defraud his creditors.

 Fraudulent intent is a required element under both § 727(a)(2) and § 727(a)(4) of the Bankruptcy Code. *In re Passmore,* 2002 WL 31994310, at *2 (Bankr.C.D.Ill.); *In re Hoflund,* 163 B.R. 879, 882–83 (Bankr.N.D.Fla.1993). Under both § 727(a)(2) and § 727(a)(4), therefore, the Court "must find that the Defendant acted with actual intent, requiring a showing of extrinsic evidence suggesting that fraud exists." *In re Davis,* 297 B.R. 555, 556 (Bankr.S.D.Ill.2003). Further, the "actual intent" mandated by § 727(a) "requires *actual subjective* intent, not objective or constructive intent." *In re Downey,* 242 B.R. 5, 13 (Bankr.D.Idaho 1999)(Emphasis supplied).

 A finding that a debtor acted with actual, fraudulent intent "may be based on circumstantial evidence or inferred from the surrounding facts and circumstances." *In re Matus,* 303 B.R. at 672. Consequently, courts generally look to certain, commonly recognized factors to determine whether a debtor possessed the requisite actual, fraudulent intent. These factors include:

(i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of the pattern or series of transactions or course of

conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of the events and transactions under inquiry.

*Id.* at 672–73. See also *In re Vina,* 283 B.R. 803, 808 (Bankr.M.D.Fla.2002).

 In this case, the Court finds that the Debtor acted with the requisite intent by transferring property to his son in the months prior to the petition date, and also by failing to disclose those transfers, as well as his interest in certain assets, on his bankruptcy schedules and statements.

First, it is significant that the Debtor consulted with a bankruptcy attorney on September 10, 2002, and that the events that form the basis of this action were initiated within a matter of days after the consultation. The Ohio Account was opened in his son's name, for example, only two days after the Debtor's meeting with his attorney, and the transfers to the Ohio Account and purchase of the vehicle in his son's name all occurred within three months following the consultation.

Second, the proceeds from the real estate commissions were transferred into an account maintained in a family member's (his son's) name.

Also, the Ohio Account was opened with the admitted purpose of using the account for the Debtor's benefit. The Debtor has acknowledged, for example, that the Ohio Account was established with the intention of using it for the payment of the Debtor's own personal bills and expenses, even though the account was opened in his son's name. (Transcript, pp. 22, 42). Further, although the Ohio Account was not necessarily "secret," it is significant that it was maintained outside the state of Florida, where the Debtor resides and filed his bankruptcy petition.

Similarly, although the Debtor arranged to have the Toyota titled in his son's name, the vehicle was purchased with the proceeds of the Debtor's commissions, and was purchased specifically for use by the Debtor. The Debtor has, in fact, remained in possession of the vehicle since it was acquired. (Transcript, pp. 27, 38–39, 43, 47).

The Debtor's initial consultation with his attorney, the opening of the Ohio Account, the receipt of the commissions and the transfer of the commissions to the Ohio Account, and the purchase of the Toyota with funds from the Ohio Account, all occurred within the three-month period between September and November of 2002.

The Debtor filed his bankruptcy petition one month later, on December 20, 2002. Despite the close proximity in time, the Debtor failed to disclose either the transfer of his commissions to the Ohio Account, or the purchase of the Toyota, on his bankruptcy schedules. In fact, it appears that the Debtor did not even acknowledge his interest in the Toyota at the § 341 meeting of creditors conducted the following month, on January 22, 2003. (Transcript, p. 37). The Schedules also contained various other inaccuracies, including the omission of a bank account at SunTrust, the omission of an E–Trade financial account, and his interest in two business ventures in the years leading up to the filing.

The transactions and events that occurred between September and December of 2002, considered in their entirety, evidence a pattern or course of conduct designed to defraud the Debtor's creditors. The Court finds that the Debtor transferred and concealed property, and made false oaths in connection with his bankruptcy case, with the actual intent to hinder, delay, or defraud his creditors.

## E. The Debtor's evidence

As set forth above, once a plaintiff establishes a case under § 727(a) by a preponderance of the evidence, the debtor bears the ultimate burden of proving that he should receive his discharge despite the evidence presented against him. The Debtor has failed to make such a showing in this case.

 First, it is not material for purposes of § 727 that the Debtor ultimately paid the Trustee an amount equal to the transfers. "The transfer of the subject property back to the bankruptcy estate is irrelevant; it is the initial transfer and the Debtor's actual intent at that time which is crucial." *In re Matus,* 303 B.R. at 674. A debtor's attempt to reverse a "tainted transaction" does not negate the initial fraudulent conduct. *In re Brooks,* 278 B.R. 563, 566 (Bankr.M.D.Fla.2002). The Debtor's attempt in this case is particularly ineffective, since he did not restore the funds until approximately two months after the adversary proceeding had been filed against him.

 Similarly, the Court is not persuaded by the fact that the Debtor eventually corrected the inaccuracies on his schedules, since the disclosures were made only after inquiry by the Trustee. A trustee should not be required to "engage in a laborious tug of war to drag the simple truth into the glare of daylight," and a debtor's disclosure only after being examined at the meeting of creditors was insufficient to redeem his prior fraud. *In re Matus,* 303 B.R. at 674 (quoting *In re Bratcher,* 289 B.R. at 218).

 Finally, the Debtor contends that he should not be accountable for his course of conduct, because he was under extreme stress, and was severely depressed at the time that he was preparing to file his bankruptcy case. Although the Court is sympathetic to the Debtor's emotional condition, no evidence was presented that the Debtor had either sought or received any medical or psychological care as a result of his depression. On the contrary, the Debtor testified that he had not seen a physician, other than an eye doctor, for approximately ten years prior to the filing. (Transcript, p. 52). Additionally, it is likely that many debtors are under stress at the time they prepare to file a bankruptcy case that will subject all of their nonexempt assets to administration by a trustee and distribution to their creditors. However, this is not an excuse for failing to disclose significant assets or transfers. Under these circumstances, the Court cannot relieve the Debtor of the consequences of his inappropriate acts based upon his undocumented emotional distress.

The Debtor is not an unsophisticated individual. He is a realtor who promotes himself professionally on his self-designed web page (UST's Exhibit 21), and he sought the advice of an attorney in preparation for his bankruptcy filing. Based on all of the facts of this case, the Court finds that the Debtor failed to satisfy his ultimate burden of proving that he is entitled to a discharge pursuant to § 727(a)(2) and § 727(a)(4)(A).

## F. Section 727(a)(4)(D)

 Under § 727(a)(4)(D) of the Bankruptcy Code, a debtor's discharge may be denied if he withheld relevant financial information from an officer of the estate. The UST has not established this cause of action under § 727(a)(4)(D) with the requisite degree of proof.

In the Complaint, the UST alleges that "Defendant failed to provide the Trustee with complete and accurate information in his Schedules and Statement of Financial Affairs. By withholding critical information, as described in the preceding para-

graphs, the Defendant's Schedules and Statement of Financial Affairs were misleading and have adversely impacted the Trustee's ability to administer the case." (Doc. 1, Complaint, ¶ 72). No additional allegations or evidence were offered in support of the UST's claims under § 727(a)(4)(D).

The creditor in *Matus* presented a similar argument, and the Court stated:

> The Plaintiff's section 727(a)(4)(D) objection is essentially based on the same evidence as its section 727(a)(4)(A) objection. While the Plaintiff has proved that the Debtor failed to disclose information related to his property or financial affairs with the intent to hinder the investigation of the trustee and creditors, *it has failed to present evidence of specific document requests made by the Trustee.* "If the documents were never requested, and absent any allegations of active concealment of such documents, there cannot be a claim of knowing and fraudulent withholding."

*In re Matus*, 303 B.R. at 679–80 (quoting *In re Holstein*, 272 B.R. 463, 479 (Bankr.N.D.Ill.2001))(Emphasis supplied). Likewise, in this case, the UST has not identified specific documents that were requested and not delivered by the Debtor. The UST's allegations under § 727(a)(4)(D) essentially duplicate the allegations under § 727(a)(2) and § 727(a)(4)(A), and are therefore not sufficient to establish a separate cause of action under that section.

## Conclusion

The Debtor's discharge should be denied pursuant to § 727(a)(2)(A), § 727(a)(2)(B), and § 727(a)(4)(A) of the Bankruptcy Code. The Court finds that the Debtor transferred property, including the proceeds of his real estate commissions and his interest in a vehicle, to his son within the one-year period prior to filing his bankruptcy case, and then concealed the transfers and assets by failing to disclose them on his bankruptcy schedules and statements. The Court also finds that the Debtor made the transfers, and engaged in the concealment, with the actual intent to defraud his creditors. Further, the Debtor's knowing failure to disclose the information, as well as other relevant financial information, on his schedules and statements constitutes a false oath in connection with his case.

The UST did not establish that the Debtor's discharge should also be denied under § 727(a)(4)(D), however, since she did not identify specific documents that were requested and not produced.

Accordingly:

**IT IS ORDERED** that:

1. A Final Judgment shall be entered in favor of Felicia S. Turner, United States Trustee—Region 21, and against the Debtor, Peter F. Moeritz, on Count I, Count II, and Count III of the Complaint.

2. The discharge of the Debtor, Peter F. Moeritz, is denied pursuant to § 727(a)(2)(A), § 727(a)(2)(B), and § 727(a)(4)(D) of the Bankruptcy Code.

3. A Final Judgment shall be entered in favor of the Debtor, Peter F. Moeritz, and against Felicia S. Turner, United States Trustee—Region 21, on Count IV of the Complaint.

4. A separate Final Judgment will be entered consistent with this Order.