In re Jeffrey A. ARTURA, Debtor.

BAY VIEW LAUNDRY, INC., Plaintiff,

v.

Jeffrey A. ARTURA and Bay Hills Formals, Inc., Defendants.

Bankruptcy No. 892–86374–478.
Adv. No. 893–8076–478.

United States Bankruptcy Court,
E.D. New York.

March 18, 1994.

Although the complaint sets forth additional causes of action for barring the Debtor's discharge, it is not necessary to consider them since finding that the Debtor's discharge should be barred pursuant to Section 727(a)(3) is sufficient. Anything further would be superfluous.

Jessel Rothman, P.C. by Jessel Rothman and Kim Cardalena, Mineola, NY, for plaintiff.

Reno & Artura by Richard F. Artura, Lindenhurst, NY, for debtor.

## DECISION ON ISSUE OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 727(a)(3)

DOROTHY EISENBERG, Bankruptcy Judge.

The Plaintiff, Bay View Laundry, Inc. (the "Plaintiff"), has brought an adversary proceeding to object to the discharge of Jeffrey A. Artura ("Debtor") and Bay Hill Formals, Inc. (collectively, the "Defendants") pursuant to 11 U.S.C. § 727(a)(3) claiming that the Debtor has failed to keep adequate books and records from which his financial condition could be ascertained. The Debtor contends that he has maintained the quality of record keeping required of a Debtor of his stature pursuant to the Bankruptcy Code and the relevant case law.

The Debtor also requests that this adversary proceeding be dismissed based on the Plaintiff's failure to file a Pre–Trial Conference Order. The Debtor's request to dismiss the adversary proceeding is denied. This Court finds that the Plaintiff's failure to file a Pre–Trial Conference Order required by this Court is not fatal in this case, and is hereby waived.

Since Bay Hill Formals, Inc. is not a debtor in this Court, any action against that corporate entity is not within this Court's jurisdiction and as to that defendant, the action must be dismissed.

Based upon the facts of this case, this Court finds that the Debtor has failed to keep adequate books and records from which his financial condition could be ascertained and finds for the Plaintiff.

## FINDINGS OF FACTS

The Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code on November 13, 1992. The Plaintiff is a creditor of the Debtor pursuant to a judgment entered against defendants in the amount of $23,324.29.

During the trial on September 22, 1993, the following relevant facts were established. Many of the Debtor's family were engaged in the tuxedo rental business. The Debtor had worked at the family business since he was a youth. In his early 20's, he went into the tuxedo rental business for himself, the Debtor formed Bay Hill Formals, Inc. (the "Corporation"). On August 12, 1987, the Debtor, as president and sole stockholder of the Corporation, purchased the assets of Bay View Laundry, Inc. In consideration for the assets, Debtor executed a corporate promissory note in the amount of $25,000 and guaranteed the debt. The note was secured by a Security Agreement which pledged the assets being sold. These assets included four (4) sewing machines, one (1) presser, one (1) boiler, tables, chairs and trade fixtures and the lease of the Plaintiff's business. Eventually, the Defendants defaulted on the note which led to a judgment against Defendants in the amount of $23,324.29 entered on April 25, 1991.

Prior to the default, the Debtor operated the business at the premises in Bayside, New York. He had one employee aside from himself. He ran the business, and was directly responsible for the success or failure of the business. While the Debtor was operating at the Bayside premises, he opened and operated similar businesses at locations in Flushing, New York and in Great Neck, New York. The Flushing business was operated for approximately one (1) year and the Great Neck business was operated for a short peri-

od of time. The Debtor has provided no books or records for these businesses. He has provided no information pertaining to the lease arrangements, whether any creditors were paid, whether any tax returns were filed, or what transactions, if any, were conducted through any bank account for these additional business operations.

The testimony further revealed that the Debtor used the income earned by the Corporation to pay his personal expenses, as well as any business expenses. The Debtor did not keep any record of the income earned by the Corporation for services rendered. The Debtor claims that he withdrew $100 per week as salary, yet he has no records of the withdrawals. The only records presented in evidence were a corporate checkbook binder which included two (2) pages of blank checks in the name of Bay Hill Formals, Inc., two (2) pages of check stubs, and various deposit slips for an account at Chemical Bank. (Plaintiff's Exhibit "3"). There were approximately twenty (20) voided checks and perhaps six (6) cancelled checks from this account. There were no bank statements or substantial cancelled checks, or even check stubs from which any financial transactions could be ascertained, either corporate or personal. There were no other corporate records from any of the businesses conducted by the Debtor. Although the Debtor asserts that the only corporate bank account he maintained was with Chemical Bank, there does exist one deposit slip in the Debtor's name from an account at Apple Bank (Exhibit "6") which could not be substantiated since there are no cancelled checks, bank statements or check stubs for this account.

The Debtor has not provided any tax returns, claiming that for the past three (3) tax years, he never earned enough to file tax returns. Although the Debtor claims that he did recall filing corporate tax returns, he failed to produce these returns, and no other evidence was produced to establish that the returns were filed. He produced no personal records, claiming that there was no need for such records since he withdrew funds as needed from the Corporation, which was his only source of income. In sum, the Debtor treated the corporate account as his own.

This conduct is evidenced by Plaintiff's Exhibit "2", a cancelled check drawn on the Corporation's Chemical Bank account payable to GMAC, signed by the Debtor, with an indication thereon that the payment was to be applied to the Debtor's account. The Debtor testified that this was a payment for his personal auto.

In addition to the Debtor's failure to separate his personal account from his corporate account, the Debtor failed to provide an adequate explanation for the disappearance of certain assets purchased from the Plaintiff. It appeared that the Debtor had sold a presser/boiler, which was subject to a valid lien held by the Plaintiff, to an unidentified "parts man" for approximately $1,000. The Debtor did not produce a receipt or other documentation to evidence the terms of the sale, nor could the Debtor adequately explain what he did with the proceeds of the sale. At the trial, the Debtor initially did not remember what happened to two of the four sewing machines that he had acquired from the Plaintiff, but later recalled that they were located in his father's garage, and offered to return them to the Plaintiff. As to the other machinery and fixtures that he had acquired, he claimed that they were either valueless or of inconsequential value and had been discarded by him at or after their removal from the premises.

This Court finds that the sale by the Debtor of collateral subject to the Plaintiff's security interest constituted conversion by the Debtor of the Plaintiff's property without Plaintiff's knowledge or permission, and without adequate records from which that transaction could be determined. Had the Debtor been able to supply this information, it might be possible for the secured creditor to regain its collateral from the purchaser.

The Debtor, as witness, was barely credible. He either failed to remember or remembered facts generally without detailed information and responded vaguely to specific questions asked.

The Debtor's excuse of being a mere twenty-one (21) years of age when he went into business and having had only two (2) semesters at a community college past high school, and admitting to merely being a "sloppy"

record keeper is insufficient. The Debtor's excuses do not absolve him from the minimal requirements of record keeping from which an ordinary, unsophisticated person could determine what income was received and what expenses were paid either to corporate creditors or to himself. He further failed to keep any records to indicate how he had disposed of the items of property that collateralized the Plaintiff's security interest. The fact that the Debtor had undertaken to operate similar businesses at two (2) additional locations further belies his claim of youthful inexperience.

## DISCUSSION

11 U.S.C. § 727(a)(3) states, in relevant part, as follows:

> [t]he court shall grant the debtor a discharge, unless ... the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

■ The purpose of § 727(a)(3) is to give a creditor and the Bankruptcy Court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge. *See Meridian Bank v. Alten*, 958 F.2d 1226 (3rd Cir.1992); *In re Reitz*, 69 B.R. 192 (N.Dist.Ill.1986); see also, 4 *Collier on Bankruptcy* ¶ 727–03(1), 15th Ed.1979.

Furthermore, as set forth in *In re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936):

> Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books ... The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Compete disclosure is in every case a condition precedent to the granting of the discharge and if such

a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies.

(Citations omitted).

The Bankruptcy Courts have consistently denied a debtor a discharge for failing to keep records from which the debtor's financial status and business dealing might be ascertained. *See, e.g., In re Bujak*, 86 B.R. 30 (Bankr.W.D.N.Y.1988); *In re Milano*, 35 B.R. 89 (Bankr.S.D.N.Y.1983), (disclosure of financial condition is prerequisite to obtaining a discharge); *In re Switzer*, 55 B.R. 991 (Bankr.S.D.N.Y.1986) (debtor unable to produce documentary evidence to trace funds denied discharge); *In re De Lancey*, 58 B.R. 762 (Bankr.S.D.N.Y.1986) (debtor's failure to produce adequate records to allow creditor to ascertain his financial condition warranted denial of discharge).

■ A creditor seeking to deny the debtor's discharge pursuant to Section 727(a)(3) need not demonstrate any intent on the part of the debtor to conceal his financial condition. *In re Moreau*, 161 B.R. 742 (Bankr. D.Conn.1993).

In addition, courts have denied a discharge in bankruptcy for failing to produce documents which would distinguish personal expenses from corporate expenses. *See In re Shapiro*, 59 B.R. 844 (Bankr.E.D.N.Y.1986); *Matter of Wilson*, 33 B.R. 689 (Bankr. M.D.Ga.1983).

■ In the instant case, the Debtor did not keep any records sufficient to even guess at his financial condition, let alone trace any assets or liabilities. When asked what happened to the proceeds of the sale of personal property subject to lien, the Debtor could not remember, let alone adequately explain.

In this case, failure to keep *any* meaningful financial records or document important business transactions cannot be justified on the basis of inexperience or lack of education. The failure herein, if not outright intentional, rises to the level of reckless disregard to any creditor's right to ascertain his financial affairs.

When one engages in a business venture which results in a debtor and creditor rela-

**16**

tionship, society requires that a person act responsibly. Displaying a wanton disregard for a creditor's property rights, and a failure to maintain any business or personal records from which his business affairs can be ascertained is not to be condoned or excused.

Although the level of record keeping which is necessary to obtain a discharge depends on many factors and varies from case to case, a level at which the Debtor's financial condition or business transactions cannot be ascertained, combined with the facts in the present case, justifies denial of the Debtor's discharge of his debts.

### CONCLUSION

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

2. Pursuant to 11 U.S.C. 727(a)(3), the Debtor has failed to keep or preserve any recorded information from which the Debtor's financial condition or business transactions may be ascertained without adequate excuse or justification.

3. The Debtor's discharge is denied.

Submit an Order denying the Debtor's discharge within ten (10) days hereof.