**In re Thomas J. MEYER, Debtor.**

**S. Ronald Henbest, Plenary Guardian of the Estate and Person of Suzanne M. Henbest, Plaintiff,**

v.

**Thomas J. Meyer, Defendant.**

**Bankruptcy No. 02 B 30576.**
**Adversary No. 02 A 02122.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 16, 2004.

■

---

Jerome F. Crotty, Rieck and Crotty, P.C., for Movant or Plaintiff.

David E. Cohen, David E. Cohen, P.C., for Respondent or Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to the Chapter 7 petition of Thomas J. Meyer

("Debtor" or "Meyer"). S. Ronald Henbest, Plenary Guardian of the Estate of Suzanne Henbest ("Plaintiff"), seeks a denial of discharge under 11 U.S.C. § 727(a)(2)(A) asserting that certain transfers made by the Debtor to his spouse were fraudulent. The instant Adversary proceeding was tried, evidence taken, the parties rested, and the Court now makes and enters the following Findings of Fact and Conclusions of Law. Because the facts do not establish an improper intent to delay, hinder or defraud creditors, judgment will be entered in favor of the Debtor granting a discharge.

### FINDINGS OF FACT

***Findings of Fact are based on evidence presented at trial.***

1. Thomas J. Meyer filed a petition for relief under Chapter 7 of the Bankruptcy Code on August 12, 2002.

2. In August of 1998, approximately four years before Meyer's filing, S. Ronald Henbest, Plenary Guardian of the Estate of Suzanne Henbest, filed a complaint in the Circuit Court of Cook County, Illinois against Meyer and several other defendants alleging negligence for injuries to Suzanne Henbest arising out of an airplane crash ("state court litigation").

3. In April 2000, during pendency of the state court litigation, Meyer consulted an estate planning attorney, Mr. Babarik, and instructed him to prepare specified estate planning documents for himself and his wife, Tracy Meyer. Babarik executed revocable trusts, pourover wills and healthcare power of attorney in 2000. (Pl.'s Exh. 12–15[1]).

4. The Statement of Financial Affairs accompanying Meyer's Chapter 7 bankruptcy petition disclosed two conveyances to his wife on May 1, 2002: transfers of his one-half interest in real property in Delevan, Wisconsin ("Wisconsin property") and also his one half interest in a Smith Barney Account. (Pl.'s Exh. 18).

5. These conveyances were made without consideration and within one year of the date of the filing of the petition.

6. Roger Stelk, a real estate attorney, did the legal work required for transfer of the Wisconsin property.

7. Prior to these transfers, Mr. and Ms. Meyer held ownership of the Wisconsin property as joint tenants. (Pl.'s Exh. 18, Schedule B.) The market value of the Wisconsin property was approximately $86,000, but at the time of the conveyance, the Meyers had less than a $5,000 equity in that property.

8. The value of the Smith Barney Account was $22,000 when transferred. Prior to this conveyance, Meyer and his wife held joint title to the Smith Barney Account. (Pl.'s Exh. 18, Schedule B).

9. After both transfers, Ms. Meyer held exclusive title to the Wisconsin property and the Smith Barney Account.

10. Meyer scheduled the Plaintiff as a creditor holding an unsecured nonpriority claim of $6.4 million. (Pl.'s Exh. 18, Schedule F).

11. On June 6, 2002, one month after the conveyances and two months prior to filing of the bankruptcy petition, a $6.8 million judgment was entered against Meyer in the state court litigation. (Pl.'s Exh. 1).

12. Meyer received a Chapter 7 discharge in December of 2002. By agreement of the parties the discharge order was vacated without prejudice to permit

---

**1.** "Pl.'s Exh." refers to the Plaintiff's Exhibits admitted into evidence at trial. "Def.'s Exh." refers to the Debtor–Defendant's Exhibits admitted at trial.

adjudication of the present Adversary. *See* Agreed Order Vacating Discharge Order of December 12, 2002.

13. Further statements of fact contained in the Conclusions of Law will stand as additional Findings of Fact.

### CONCLUSIONS OF LAW

### JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and has been referred by the District Court pursuant to District Court Internal Operating Procedure 15(a). Venue is proper in this District under 28 U.S.C. § 1409(a).

### DISCUSSION

**Fraudulent Transfers under Section 727(a)(2)(A)**

Plaintiff contends that the May 1, 2002 conveyances of the Debtor's interest in the Smith Barney Account and Wisconsin property were fraudulent transfers justifying a denial of discharge under 11 U.S.C. § 727(a)(2)(A). That section provides in pertinent part:

(a) The court shall grant the debtor a discharge unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

■ The denial of discharge is a harsh result. *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1283 (9th Cir.1996). Consistent with the "fresh start" purposes underlying the Bankruptcy Code, Courts construe Section 727 liberally in favor of debtors and strictly against parties objecting to discharge. *Id.* at 1281.

■ To establish a fraudulent transfer, a creditor must prove by a preponderance of evidence:

(1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property or permitting any of these acts to be done.

*Village of San Jose v. McWilliams (In re McWilliams)*, 284 F.3d 785 (7th Cir.2002). Meyer admits that he transferred the Wisconsin property and Smith Barney Account within one year of the filing of the petition. The sole factor in dispute is whether he transferred the property with the required wrongful intent.

■ Actual intent to hinder, delay, or defraud may be proven by circumstantial evidence or by inferences drawn from a debtor's course of conduct. *In re Krehl*, 86 F.3d 737, 744 (7th Cir.1996). Certain circumstantial factors, or "badges of fraud" may warrant an inference of fraudulent intent. These include:

(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pat-

tern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. *McWilliams*, 284 F.3d at 791.

Plaintiff contends that the May 1, 2002 transfers were fraudulent based on the following: the transfers were made for no consideration; the transfers were made to a family member, the Debtor's spouse; Debtor continues to enjoy the use and benefit of such assets, since the assets still belong to his wife; after the transfers, Debtor was essentially left with no nonexempt assets; and that Debtor had insufficient assets to participate in the state court litigation or to satisfy the judgment. Pl.'s Mem. of Law at 3–5.

■ Plaintiff contends further that the establishment of these facts means that fraud is presumed and the Debtor's intent is immaterial. Compl. ¶ 10–16; Pl.'s Proposed Conclusions of Law ¶ 6–11. This argument is derived from the doctrine of fraud in law. Fraud in law is a constructive theory of fraud under the Illinois Uniform Fraudulent Transfer Act. *See* 740 ILCS 160/1 et seq.[2]

■ The legal requirements of fraud in law and Section 727(a)(2)(A) of the Bankruptcy Code share similar purposes—the negation of fraudulent transfers—and each attempts to divine a debtor's intent to hinder, delay or defraud creditors by analyzing circumstantial or extrinsic evidence of fraud. 740 ILCS 160/5.

■ To void a transfer for fraud in law, a creditor must prove (1) a voluntary transfer for inadequate consideration, (2) an existing indebtedness against the donor, and (3) retention by the donor of insufficient property to satisfy the indebtedness. *Klingman v. Levinson*, 114 F.3d 620, 626 (7th Cir.1997). These factors are similar to those considered under Section 727(a)(2)(A). However, the two doctrines differ in at least one critical aspect; intent is immaterial under fraud in law after proof of the circumstantial factors above. *Anderson v. Ferris*, 128 Ill.App.3d 149, 153, 83 Ill.Dec. 392, 470 N.E.2d 518 (2nd Dist.1984). However, wrongful intent is a necessary element under Section 727(a)(2)(A), and that requirement cannot be ignored since that would contravene the express statutory language. Section 727(a)(2)(A) states "the court shall grant the debtor a discharge unless the debtor, with intent to hinder delay or defraud a creditor ... has transferred property." To the extent Plaintiff's fraud in law argument implies that the element of intent need not be proven here, that argument contradicts Section 727(a)(2)(A) and must be rejected.

---

**2.** The Illinois Uniform Fraudulent Transfer Act states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5

■ Fraudulent intent under Section 727(a)(2)(A) may be established by circumstantial evidence, and determination of intent is always a fact intensive inquiry. *See Cohen v. Bucci (In re Bucci),* 97 B.R. 954, 956 (Bankr.N.D.Ill.1989) (citing *Lovell v. Mixon,* 719 F.2d 1373 (8th Cir.1983)).

■ Plaintiff has proven the following: that the May 1, 2002 transfers were gratuitous and without consideration; the transferee was a close family member; the Debtor's insolvency; and the specter of a looming civil judgment during the period of the transfers. These facts standing alone raise a presumption that Debtor intended to delay, hinder or defraud creditors, but this presumption may be rebutted by a debtor's evidence demonstrating a lack of fraudulent intent. *McWilliams,* 284 F.3d at 791 (holding that if a creditor can show that [one or more badges of fraud] are shown this "creates a presumption of intent to defraud establishing plaintiff's prima facie case and shift[s] the burden [to the debtor-defendant] of demonstrating that he lacked fraudulent intent.")

### The Presumption of Fraud Has Been Rebutted

■ Meyer explained that changing family and economic conditions lead to the May 1, 2002 transfers. Meyer testified that at the time of the transfers in issue his wife was pregnant with their second child and he wanted to plan for the loss of her income and the loss of her contributions to her pension plan. Tr. at 87.

These circumstances prompted Meyer to follow the advice of his estate planner so as to equalize his and his wife's assets and take advantage of certain federal tax benefits and provide future security for their children. Tr. at 88–90.

Plaintiff disputes Meyer's explanation, citing the testimony and opinion of its expert witness, Mr. Conover. Conover opined that, based on his review of the Meyers' assets before and after the transfers, the transfers did not have any tax or estate planning benefits. Pl.'s Mem. of Law at 5–6; Pl.'s Exh. 17. However, Conover's opinion is not persuasive evidence of intent to defraud. He admitted on cross examination that he lacked knowledge of information pertinent to the Debtor's intent. Tr. at 42. Moreover, Conover did not know Ms. Meyer's income or employment on the date of the conveyances. Tr. at 45. Nor was he aware of her intentions to stop working and the effect this would have on the Meyers' finances. Meyer testified that the loss of his wife's income was an integral factor in his decision to make the transfers, Tr. at 87, and his testimony was credible.

Plaintiff further contends that the close proximity of the transfers to the entry of judgment in the state court litigation undermine Debtor's explanation. Plaintiff emphasizes that Meyer met with his estate planning attorney in 2000 and waited more than two years to transfer his assets to his wife, doing so one month prior to entry of the $6.8 million judgment against him. Pl.'s Mem of Law 6–8.

Meyer testified that he completed a series of estate planning transactions over a period of years culminating with the transfers of May 1, 2002. Babarik corroborated this testimony. He testified that he gave Meyer general estate planning advice believing that Meyer would make decisions on individual assets in the future.

The record shows that the Debtor established estate planning instruments and modified every significant asset owned by him and his wife. In 2000 Meyer established pourover wills, revocable trusts, and healthcare power of attorneys for him and his wife. Def.'s Exh. 6–9. Meyer further

testified that he modified his and his wife's life insurance policies in 2000. Meyer refinanced their primary residence in 2002. Lastly, the record contains the stipulation of Mr. Stelk, the attorney who executed the transfers of the Wisconsin property and the Smith Barney Account. Stelk's notes of his meeting with the Debtor indicate that the purpose of the transfers was to equalize the Meyers' assets. Def.'s Exh. 11; Pl.'s Exh. 15.

In sum, the record reflects that the Debtor received general estate planning advice from an attorney and initiated a series of transactions based on this advice. Meyer's conduct was at all times consistent with his intent to equalize his assets and provide financial security for his family.

Moreover, the Debtor did not engage in the type of conduct often found to be indicative of an intent to defraud. The record does not contain evidence of sharp dealings or misrepresentations to creditors. *See First Texas Sav. Ass'n v. Reed (In re Reed)*, 700 F.2d 986 (5th Cir.1983). His estate planning was not accompanied by conduct calculated to mislead creditors. *See* Kevin A. Shacter, *Bankruptcy Estate Planning: Grounds for Denial of Discharge Under Section 727(a)(2)(A)*, 7 BANKR. DEV. J. 199 (1990). Indeed, Meyer clearly revealed the transfers on his bankruptcy schedules.

Plaintiff cites *Teitelbaum v. Parameswaran (In re Parameswaran)*, 50 B.R. 780 (S.D.N.Y.1985) as authority for its contention that Meyer's discharge should be denied. In that case, the court denied the debtor a discharge based upon the debtor's transfer to his wife of his interest in the family residence, which was previously owned by them as joint tenants. The Court found that the debtor's transfer was solely motivated by an attempt to put the property beyond the reach of his creditors.

Although factually similar, that case is inapposite since the same fraudulent intent was not shown here.

### CONCLUSION

The preponderance of evidence did not demonstrate that Debtor had the intent to hinder, delay or defraud his creditors. Therefore, Plaintiff has not met its burden of establishing the statutory requirement of intent under Section 727(a)(2)(A). A separate judgment order will be entered consistent with this opinion.