**In re Brian Scott FLOYD, Debtor.**

**Citrus & Chemical Bank, Plaintiff,**

v.

**Brian Scott Floyd,**
**Defendant/Counterplaintiff,**

v.

**Citrus & Chemical Bank,**
**Counterdefendant.**

**Bankruptcy No. 8:03–BK–22401–PMG.**
**Adversary No. 8:04–AP–150–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 28, 2005.

Thomas Joel Chawk, Family Legal Ctrs. of Chawk & Assoc., Lakeland, FL, for Debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Complaint filed by the Plaintiff, Citrus & Chemical Bank (the Bank).

In its Complaint, the Bank requests the entry of a judgment denying the discharge of the Debtor, Brian Scott Floyd, pursuant to § 727(a)(2) of the Bankruptcy Code, based on the Debtor's fraudulent transfer

of property, pursuant to § 727(a)(3) of the Bankruptcy Code, based on the Debtor's falsification of records from which his financial condition might be ascertained, and pursuant to § 727(a)(4) of the Bankruptcy Code, based on the Debtor's false oaths in connection with his bankruptcy case.

The Debtor denied the material allegations of the Complaint, and asserted a Counterclaim against the Bank for an award of attorney's fees, costs, and punitive damages. The Counterclaim is based on the Debtor's contention that the action was filed for an improper purpose and with insufficient pre-filing investigation.

### Background

The Debtor and Angela Kay Floyd (Angela) were married in January of 2002.

At the time of their marriage, the Debtor owned a 1986 Toyota pickup truck, free and clear of liens, and Angela owned a 1995 Bombardier Sea–Doo personal watercraft, also free and clear of liens.

On July 3, 2003, the Debtor signed a Promissory Note in which he promised to pay the sum of $1,600.00 to Louise Dobson no later than July 2, 2004, with interest at the rate of six percent per annum. The Note was secured by the Debtor's 1986 Toyota pickup truck. Louise Dobson is reflected as the holder of the first lien on the truck on a Certificate of Title issued on July 3, 2003. (Plaintiff's Exhibit 3; Debtor's Exhibits 4, 6).

Also on July 3, 2003, Angela signed a Promissory Note in which she promised to pay the sum of $500.00 to Louise Dobson no later than July 2, 2004, with interest at the rate of six percent per annum. The Note was secured by her Sea–Doo personal watercraft. Louise Dobson is reflected as the holder of the first lien on the personal watercraft on a Certificate of Title issued on July 3, 2003. (Plaintiff's Exhibit 2; Debtor's Exhibits 1, 3).

Louise Dobson is the Debtor's mother.

The Debtor and Angela filed a joint petition under chapter 7 of the Bankruptcy Code on October 28, 2003.

On their "Schedule B—Personal Property," the Debtor and Angela listed the Toyota with a current market value of $1,100.00, and with a "Balance Owed $1,200/NO EQUITY." They listed the personal watercraft with a market value of $500.00, and with a balance owed of $500.00.

On their "Schedule D—Creditors Holding Secured Claims," the Debtor and Angela listed Louise Dobson as a creditor holding a Purchase Money Security Interest in the Toyota in the amount of $1,200.00, and a Purchase Money Security Interest in the personal watercraft in the amount of $500.00.

On December 23, 2003, Angela filed a Motion for Separate Administration, and requested that her bankruptcy case be administered separately from the Debtor's. (Doc. 14). In the Motion, Angela stated that she and the Debtor were in the process of obtaining a divorce, and that they were unable to work together to complete the bankruptcy case. On February 24, 2004, the Motion was granted, and Angela's chapter 7 case was severed from that of the Debtor.

The Bank filed an unsecured Proof of Claim in the Debtor's case in the amount of $5,493.00.

On March 15, 2004, the Bank commenced this adversary proceeding by filing a Complaint against the Debtor. The primary Factual Allegations contained in the Complaint are as follows:

5. Pursuant to the Schedules, Floyd stated that a certain 1986 Toyota and a certain 1996 SeaDo Waverunner (together, the "Collateral") had no equity and

that a creditor by the name of Louise Dobson ("Floyd's Mother") held a purchase money security interest in the same.

6. On January 23, 2004, Angela Kay Floyd a/k/a Angela Kay Schaffer testified at her 341 meeting that Floyd's Mother had given no consideration for her "security interest" in the Collateral, and that Floyd gave her the same in order to avoid losing the Collateral in connection with the Bankruptcy Case.

(Complaint, p. 2). Based on these Factual Allegations, the Bank seeks a determination that the Debtor's discharge should be denied (1) pursuant to § 727(a)(2) of the Bankruptcy Code because the Debtor transferred property within one year of the petition date with the intent to hinder, delay, or defraud creditors; (2) pursuant to § 727(a)(3) of the Bankruptcy Code because the Debtor falsified documents from which his financial condition or business transactions might be ascertained; and (3) pursuant to § 727(a)(4) of the Bankruptcy Code because the Debtor knowingly made false oaths in connection with his Schedules.

The Debtor filed an Answer, Affirmative Defense, and Counterclaim to the Complaint. In his Affirmative Defense, the Debtor alleged:

Plaintiff's allegations as set forth in Paragraph 6 above are apparently based upon the testimony of the defendant's estranged wife, ANGELA KAY FLOYD, a/k/a ANGELA KAY SCHAFFER. This testimony is a false oath and an intentional attempt to harass the defendant, his family and deceive this Court. In fact, in direct contradiction to what she has apparently told this Court, ANGELA KAY FLOYD, received money from the Defendant's mother, LOUISE DOBSON, in the form of a check for the amount of $500.00, as con-

sideration for the security interest on the above described collateral.

(Answer and Counter Petition, p. 2). In the Counterclaim, the Debtor contends that the Complaint was filed for an improper purpose and with inadequate prefiling investigation. The Debtor therefore requests an award of attorney's fees, costs, and punitive damages in his favor.

## Discussion

### I. Count I—Section 727(a)(2)

 Section 727(a)(2) of the Bankruptcy Code provides in part:

**11 U.S.C. § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2). "The elements that must be proved to avoid discharge under this provision are (1) a transfer or concealment of property, (2) belonging to the debtor, (3) within one year of filing a petition for bankruptcy, and (4) with the actual intent to hinder, delay or defraud the creditor." *In re Schifano,* 378 F.3d 60, 66–67 (1st Cir.2004)(citing *In re Hayes,* 229 B.R. 253, 259 (1st Cir. BAP 1999)).

 "Denial of discharge under this section requires proof of *actual* intent to hinder, delay or defraud a creditor." *In re Mantra,* 314 B.R. 723, 729 (Bankr.N.D.Ill.2004)(Emphasis supplied).

"[W]rongful intent is a necessary element under Section 727(a)(2)(A), and that requirement cannot be ignored since that would contravene the express statutory language." *In re Meyer*, 307 B.R. 87, 92 (Bankr.N.D.Ill.2004).

Fraudulent intent under § 727(a)(2)(A), however, may be established by circumstantial evidence. *In re Meyer*, 307 B.R. at 93. "Actual intent to hinder, delay or defraud may be proven by circumstantial evidence or by inference drawn from a debtor's course of conduct." *In re Mantra*, 314 B.R. at 729. "In determining whether the Debtor has acted with intent to defraud under § 727, the Court should consider the Debtor's 'whole pattern of conduct.'" *Id.*(citing *In re Ratner*, 132 B.R. 728, 731 (N.D.Ill.1991))(quoting *In re Reed*, 700 F.2d 986 (5th Cir.1983)).

In this case, it is clear that a transfer of the Debtor's property occurred within one year prior to the filing of the chapter 7 petition. Prior to July 3, 2003, the Debtor owned his Toyota pickup truck free and clear of liens. On July 3, 2003, he transferred an interest in the vehicle to Louise Dobson, as evidenced by the Promissory Note and a notation on the Certificate of Title issued on that date. The transfer occurred less than four months before the Debtor filed his bankruptcy petition.

The issue under § 727(a)(2)(A) therefore, is whether the Debtor made the transfer with the actual intent to hinder, delay, or defraud his creditors. The Court finds that the Bank did not establish that the transfer was made with actual fraudulent intent.

First, the evidence shows that the Debtor and Angela received funds in the total amount of $2,100.00 in exchange for the transfers. Louise Dobson wrote two separate checks to the Debtor and Angela.

The Debtor endorsed one check in the amount of $1,600.00, and Angela endorsed the other check in the amount of $500.00. (Plaintiff's Exhibits 2, 3; Debtor's Exhibits 2, 5).

In her testimony at trial, Angela did not dispute the fact that she endorsed the check written to her in the amount of $500.00. Specifically, Angela testified that, "I also recall having checks written, one to me and one to Brian, and I signed the back of it. They were written by Mrs. Dobson. I signed the one written for $500 for the SeaDoo Waverunner and then gave it to my husband." (Transcript, p. 34).

Further, the Debtor testified that he and Angela used the funds received from the checks for certain joint expenses. "It went towards attorney's fees—for the bankruptcy, to get that going. 900 and some dollars went towards rent because she had lost her job, we was behind on rent. And then truck repairs. I had a CV axle go out on my truck." (Transcript, p. 120).

It is clear that the Debtor and Angela received value in exchange for the transfers of the security interests to Dobson.

Second, the Debtor explained that he obtained the loan from Dobson and granted the security interests for a legitimate reason based on their financial condition and borrowing history.

Specifically, Angela had lost her job, and therefore her income, after she had become pregnant in 2002. With only one income, the couple eventually needed extra money for rent, for repairs on the pickup truck, and to hire an attorney to help them with their financial situation. (Bank's Exhibit 7, Deposition of the Debtor, p. 6). The Debtor testified at trial that, "We was needing money to pay rent. The wife had been out of work for a couple months. We was behind and owed, like, I believe 900

and something dollars towards rent. We had discussed the bankruptcy and, you know, found out what that was going to cost. I was needing repairs on my truck at the time." (Transcript, p. 87).

Consequently, the Debtor asked for a loan from his mother, Louise Dobson. (Bank's Exhibit 7, p. 6; Transcript, p. 134). Although Dobson had loaned them money in the past, the amount requested in the summer of 2003 was greater than the previous loans. Because the amount was larger, and because the prior loans had not been repaid, the Debtor wished to protect Dobson against further loss. (Bank's Exhibit 7, p. 10). At trial, the Debtor testified:

A: I know we borrowed money from my mother and we did give her my truck and the Waverunner as collateral or whatever you want to call it because we had borrowed money in the past and hadn't been able to pay it back.

. . . . .

Q: Why did you think of doing it [giving her a security interest] this time?
A: Because it's a very large amount of money. And we had borrowed money from her before and Angie at the time was in and out of jobs and I just wanted my mother to realize that she would get her money back.

(Transcript, pp. 83–84, 89–90). The Debtor's testimony in this regard is corroborated by the testimony of Louise Dobson. Dobson testified:

Q: How much money did you loan them?
A: $2100.
Q: Had you loaned them any money previously?
A: I had loaned them small amounts of money. Nothing—not money like that.
Q: Okay. So this is the largest amount of money you had loaned them?

A: Yes, it was.
Q: Had they paid you back for the amounts they borrowed prior to the $2100?
A: No, they hadn't.

. . . . .

Q: Have you ever taken a security interest in property before from Brian?
A: No, I haven't.
Q: Any from Angela prior?
A: No, no.
Q: Okay. Why did you do it this time?
A: Because their finances was in such terrible shape.
Q: And you knew they would be filing bankruptcy?
A: I knew that was a possibility. Yes, I did.

(Transcript, pp. 131–32).

Based on this evidence, the Court finds that the Debtor did not make the transfers with fraudulent intent. Instead, the transfers were made with the intent to obtain funds with which to pay the Debtor's immediate expenses, and to ensure repayment of the funds by providing the lender with collateral. The transfers were documented in the public records, and disclosed in the Chapter 7 case. See *In re Mantra*, 314 B.R. at 729(no fraudulent intent where a refinancing was not concealed, and where the debtor explained how he spent the funds received); *In re Meyer*, 307 B.R. at 93(no fraudulent intent where the debtor explained the family and economic conditions that led to the transfers, and where there were no "sharp dealings or misrepresentations to creditors.").

Finally, the Bank did not establish that the transfers were part of an orchestrated scheme to remove the truck and the personal watercraft from the reach of the Debtor's creditors. Although the Bank

suggested that the transaction was structured only after the Debtor had obtained the advice of an attorney, the evidence did not show that the transaction was conceived as a device to assist the Debtor in any sort of improper pre-bankruptcy planning.

Angela testified that the Debtor's bankruptcy attorney advised them to "tie up the titles" and to "borrow money from a friend" to place a lien on the truck and personal watercraft. (Transcript, pp. 30–33).

The Court finds Angela's testimony to be lacking credibility and inconsistent with the weight of the evidence. The evidence does not establish the date on which the Debtor and Angela first met with their bankruptcy attorney, for example. Consequently, the record does not show whether or not that initial consultation preceded the date of the transaction at issue. Further, the Debtor expressly testified that his bankruptcy attorney did not advise them to grant Dobson a security interest in the truck and personal watercraft. (Transcript, p. 84).

Finally, Dobson very credibly testified as to the events surrounding the transaction. Specifically, Dobson testified that she borrowed the funds to loan to Angela and the Debtor from Clint Wallace, a family friend. Clint Wallace (Wallace) is also an attorney. (Transcript, pp. 131, 133). According to Dobson, Wallace volunteered to loan Dobson the money, and also prepared the Promissory Notes for execution by the Debtor and Angela. (Transcript, p. 134–35.) Dobson unequivocally testified, however, that Wallace never gave her any advice·in connection with the transaction. On the contrary, Dobson credibly testified that she initially suggested securing the loan with collateral:

Q: Okay. So whose idea was it for you to get a security interest in their property?

A: Well, it was actually my idea.

Q: Did anyone advise you to do that?

A: No, ma'am.

Q: Clint Wallace didn't tell you to get some security in their property?

A: No. He loaned me the money and I asked him if he would do a promissory note. But as far as him advising me, no, ma'am, he didn't advise me.

(Transcript, pp. 132–33). Additionally, the Debtor testified that he asked Wallace to recommend a bankruptcy attorney, and that was "all we discussed with Mr. Wallace." (Transcript, p. 84). Wallace did not give the Debtor any advice about filing a bankruptcy case, or suggest that any liens be placed on the Debtor's unencumbered assets. (Transcript, pp. 81, 84).

The evidence does not establish that the transaction was designed to remove the truck and personal watercraft from the reach of the Trustee as part of a pre-bankruptcy planning scheme.

The Debtor's discharge should not be denied under § 727(a)(2)(A) of the Bankruptcy Code.

## II. Count II—Section 727(a)(3)

 Section 727(a)(3) of the Bankruptcy Code provides:

**11 U.S.C. § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might

be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(2)(3). The purpose of § 727(a)(3) "is to give a creditor and the Bankruptcy Court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *In re Erdheim*, 197 B.R. 23, 29 (Bankr.E.D.N.Y.1996)(quoting *In re Artura*, 165 B.R. 12 (Bankr.E.D.N.Y.1994)). The focus of the inquiry under § 727(a)(3) "is on the debtor's presentation of an accurate and complete account of his financial affairs." *In re Herbert*, 304 B.R. 67, 75 (Bankr.E.D.N.Y.2004).

■ To prevail under § 727(a)(3), therefore, a plaintiff must establish (1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, mutilated, falsified, or concealed recorded information, and (2) that it is impossible to ascertain the financial condition of the debtor as a result of the debtor's conduct *In re Liu*, 288 B.R. 155, 161 (Bankr.N.D.Ga.2002).

■ Although not expressly stated, it appears that the Bank's claim under § 727(a)(3) stems from its premise that the Debtor did not receive any consideration for the Promissory Note in favor of Dobson, and that he entered the transaction only to avoid losing the truck and personal watercraft in the Chapter 7 case. The Bank's theory under § 727(a)(3), therefore, is that the Debtor "falsified" his financial records by signing the Promissory Note and related documents, with the knowledge that the loan and security interest were not supported by legal consideration.

The Court finds that the Bank did not establish a cause of action under § 727(a)(3) of the Bankruptcy Code.

First, as shown above, the Debtor did not create "falsified" documents by signing the Promissory Note and Application for Certificate of Title. The Debtor and Angela were in immediate need of funds to pay their rent and other expenses. The Debtor asked Dobson for a loan. The evidence establishes that the Debtor and Angela received the funds reflected in the Notes as consideration for granting Dobson a first lien on the pickup truck and personal watercraft, and that they used the funds to pay their rent, attorney's fees, and truck repair costs. Regardless of whether the transfer was potentially voidable or not, therefore, the documents were not "falsified" at the time that they were executed.

Second, the Bank did not prove the second element required for denial of a debtor's discharge under § 727(a)(3). In other words, the Bank did not show that it was "impossible to ascertain the financial condition" of the Debtor as a result of the loan documents signed on July 3, 2003.

The focus of § 727(a)(3) is on the debtor's presentation and disclosure of his financial affairs. *In re Herbert*, 304 B.R. at 75–76. In this case, however, neither the transaction nor the documents were ever concealed. They were placed in the public records, and they were disclosed on the Debtor's Bankruptcy schedules.

Further, the documents were prepared in a standard format and were sufficiently complete to enable the trustee and the creditors "to trace the debtor's financial history" and to "reconstruct the debtor's business transactions." *In re Kowalski*, 316 B.R. 596, 601 (Bankr.E.D.N.Y.2004). The documents fully disclosed, for example, the date and amount of the loans, a complete description of the collateral, including the vehicle identification number, and the identity of Dobson and all of the parties to the transaction, together with

their addresses. In fact, the Bank scheduled the deposition of Dobson, among other witnesses, during the discovery phase of this proceeding. In other words, the documents "sufficiently identif[ied] the transactions [so] that intelligent inquiry can be made of them." *In re Gonzalez*, 302 B.R. 745, 753 (Bankr.S.D.Fla.2003)(quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir.1992)).

The Debtor's discharge should not be denied under § 727(a)(3) of the Bankruptcy Code.

### III. Count III—Section 727(a)(4)

Section 727(a)(4) of the Bankruptcy Code provides in part:

### 11 U.S.C. § 727. Discharge

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4). The purpose of § 727(a)(4) is "to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate." *In re Quimby*, 313 B.R. 779, 783 (Bankr.N.D.Ill.2004)(quoting *In re Costello*, 299 B.R. 882, 899 (Bankr.N.D.Ill.2003)). A "false oath" within the meaning of this section may consist of "(1) a false statement or omission in the debtor's bankruptcy schedules, or (2) a false statement made by the debtor at the examination during the course of the proceedings." *In re Monfort*, 276 B.R. 793, 796 (Bankr. N.D.Ohio 2001).

To prevail under § 727(a)(4)(A), a plaintiff must establish five elements: "(1) the debtor made a statement under oath; (2) the statement was false; (3) debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; (5) the statement related materially to the bankruptcy case." *In re Guajardo*, 215 B.R. 739, 741 (Bankr.W.D.Ark. 1997).

The Bank alleges in its Complaint that the Debtor "has made false oaths in connection with his Schedules." (Complaint, p. 3). In the Factual Allegations, the Bank asserted:

Pursuant to the Schedules, Floyd stated that a certain 1986 Toyota and a certain 1996 SeaDo waverunner (together, the "Collateral") had no equity and that a creditor by the name of Louise Dobson ("Floyd's Mother") held a purchase money security interest in the same.

(Complaint, p. 2). The Bank apparently contends, therefore, that the Debtor made a "false oath" by listing Dobson as a secured creditor holding a security interest in the Toyota pickup truck and the personal watercraft.

The Court finds that the Bank did not establish a cause of action to deny the Debtor's discharge under § 727(a)(4)(A) of the Bankruptcy Code.

Although the Debtor clearly made statements under oath when he signed his Schedules, the Bank did not prove that any of the statements were false. Specifically, Dobson held security interests in the Toyota and personal watercraft as documented by the Promissory Notes and Certificates of Title. Even if the interests were potentially voidable, the Debtor did not falsely represent their existence on the date that the petition under chapter 7 was filed. The Bank did not prove that the Debtor knowingly made a false oath.

The case is similar to *In re Arcuri*, 116 B.R. 873 (Bankr.S.D.N.Y.1990). In *Arcuri*, the plaintiff alleged that the debtor had

falsely stated on his schedules that he owed a debt to a third party, and that the debt was secured by stock owned by the debtor. *In re Arcuri,* 116 B.R. at 880. At a trial to determine whether the debtor's discharge should be denied, the debtor presented uncontradicted testimony and documentary evidence of the existence of the debt and the intent to create a security interest. Consequently, the Court found that the plaintiff failed to establish that the debtor made a "false oath" within the meaning of § 727(a)(4).

> It was incumbent upon Plaintiff to establish the falsity with evidence that was both "definite and certain." ... Clearly, to deny a discharge for making a false statement, the statement must first be proven false.

*Id.* at 881. *In Arcuri,* as in the case under consideration, the plaintiff did not establish the falsity of any statements on the debtor's schedules.

The Debtor's discharge should not be denied under § 727(a)(4) of the Bankruptcy Code.

## IV. The Debtor's Counterclaim

In his Counterclaim, the Debtor seeks an award of attorney's fees, costs, and punitive damages based on his contention that the Complaint was filed for an improper purpose and without adequate prefiling investigation. The request is made pursuant to § 523(d) of the Bankruptcy Code, Rule 9011 of the Federal Rules of Bankruptcy Procedure, and § 57.105 of the Florida Statutes.

The Court finds that the Debtor's request for sanctions should be denied.

First, § 523(d) applies by its terms only to actions seeking a determination of nondischargeability under § 523(a)(2) of the Bankruptcy Code. 11 U.S.C. § 523(d). In the Complaint filed in this case, the Bank is seeking to deny the Debtor's discharge under § 727(a), and § 523(d) is therefore inapplicable.

Second, Rule 9011 of the Federal Rules of Bankruptcy Procedure provides that the signature of an attorney or unrepresented party constitutes a certification that he has made a reasonable inquiry into the facts, that the pleading is not being presented for any improper purpose, and that the allegations set forth in the pleading have evidentiary support. Fed.R.Bankr.P. 9011(b). If an attorney or unrepresented party violates Rule 9011(b), the Court may impose sanctions under Rule 9011(c) of the Rules.

The purpose of Rule 9011 is "to deter unnecessary filings, prevent the assertion of frivolous pleadings, and require good faith filings." *In re Firnhaber,* 2004 WL 2211686, at *3 (Bankr.S.D.Ill.); *In re Lemons,* 285 B.R. 327, 332–33 (Bankr.W.D.Okla.2002). "Sanctions pursuant to Rule 9011(b) cannot be entered lightly and must be reserved for only those circumstances where pleadings are clearly frivolous and a lack of good faith has been shown." *In re Firnhaber,* 2004 WL 2211686, at *4.

In this case, the Debtor disclosed the liens on his Schedules. The liens held by Dobson, as scheduled, totaled $1,700.00. The Bank's attorney reviewed the Schedules, and requested documentation to verify the liens in a letter to the Debtor's attorney dated November 16, 2003. (Bank's Exhibit 9). Further, the Bank attended the § 341 meeting of the Debtor on December 1, 2003, and also attended the § 341 meeting of Angela on January 23, 2004. (Bank's Exhibits 6, 8). At those meetings, the Bank's representative examined the Debtor and Angela, and heard them testify under oath regarding the transaction with the Debtor's mother.

Based on the testimony, it appeared that the Debtor had transferred an interest in property to a relative within four months prior to the filing of his bankruptcy petition. The circumstances surrounding the transfer were in dispute.

The letter requesting information regarding the liens, and the examination at two § 341 meetings, all occurred before the Bank filed its Complaint. Based on the amount at issue and the information obtained by its research, the Bank's prefiling inquiry was reasonable under the circumstances, and that the Complaint was not frivolous or filed for an improper purpose within the meaning of Rule 9011 of the Federal Rules of Bankruptcy Procedure.

Similarly, § 57.105 of the Florida Statutes provides for an award of attorney's fees to the prevailing party if the Court finds that the losing party knew or should have known that its claim was not supported by the material facts necessary to establish the claim, or that the claim would not be supported by the application of existing law to the material facts. Fla. Stat. 57.105. The Debtor's request for fees and costs under this section should be denied for the reasons discussed above in connection with Rule 9011.

### Conclusion

In its Complaint, the Bank requests the entry of a judgment denying the Debtor's discharge based upon an allegedly fraudulent transfer of property, the Debtor's alleged falsification of records from which his financial condition might be ascertained, and his allegedly false oaths in connection with his bankruptcy case. The Court finds, however, that the Bank failed to establish the elements required for a cause of action under § 727(a)(2)(A), § 727(a)(3), or § 727(a)(4) of the Bankruptcy Code. Consequently, a Final Judgment should be entered in favor of the Debtor, and against the Bank in this proceeding.

The Debtor's Counterclaim against the Bank should be dismissed, however, since the record does not establish that the Bank did not conduct a reasonable inquiry under the circumstances, or that the Complaint was frivolous or filed for an improper purpose.

Accordingly:

**IT IS ORDERED** that:

1. The discharge of the Debtor, Brian Scott Floyd, should not be denied pursuant to § 727(a)(2)(A), § 727(a)(3), or § 727(a)(4) of the Bankruptcy Code.

2. The Debtor, Brian Scott Floyd, is entitled to receive a discharge pursuant to § 727 of the Bankruptcy Code.

3. A Final Judgment will be entered on the Complaint in favor of the Debtor, Brian Scott Floyd, and against the Plaintiff, Citrus & Chemical Bank.

4. The Counterclaim of the Debtor, Brian Scott Floyd, against Citrus & Chemical Bank, is dismissed.