**In re Ambrozy Jerry FASOLAK, Debtor.**

**D.A.N. Joint Venture III, L.P., Plaintiff,**

**v.**

**Ambrozy Jerry Fasolak, Defendant.**

**Bankruptcy No. 8:04–BK–13861–PMG.**

**Adversary No. 8:05–AP–173–PMG.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 1, 2007.

---

23. *Donnell,* 357 B.R. at 399–400 (footnotes omitted).

Keith A. Graham, Marchena & Graham, P.A., Orlando, FL, for Plaintiff.

Harvey J. Spinowitz, Harvey J. Spinowitz, P.A., Clearwater, FL, for Debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The Plaintiff, D.A.N. Joint Venture III, L.P., commenced this adversary proceeding by filing a Complaint to Deny Discharge.

In the Complaint, the Plaintiff asserts that the discharge of the Debtor, Ambrozy Jerry Fasolak, should be denied (1) pursuant to § 727(a)(2) of the Bankruptcy Code, based on the Debtor's fraudulent transfer or concealment of property; (2) pursuant to § 727(a)(3), based on the Debtor's failure to keep or preserve recorded financial information; (3) pursuant to § 727(a)(4), based on the Debtor's false oaths made in the case; and (4) pursuant to § 727(a)(5), based on the Debtor's failure to satisfactorily explain a loss of assets.

### Background

The Debtor was seventy-two years old at the time of trial, and apparently is of Ukrainian descent. For more than thirty years, beginning in 1970, the Debtor was the sole owner and president of a Pennsylvania corporation known as A & F Corporation. A & F Corporation was engaged in the business of manufacturing certain large equipment for paper mills. Prior to 2001, the business was very successful, and maintained approximately 100 employees at one time. (Transcript, pp. 105, 177; Debtor's Exhibit 9, pp. 9–10).

The corporation's operations in Pennsylvania were conducted on real property owned by the Debtor, individually.

While the Debtor operated his business, he and his family lived in Pennsylvania. The Debtor and his wife, Marcinei Fasolak, were married in 1999.

In March of 2002, the Debtor and National Penn Bank negotiated a loan arrangement. Pursuant to the arrangement, the Bank issued a line of credit to A & F Corporation in the amount of $750,000.00, and entered into a commercial mortgage agreement for $800,000.00 with respect to the real property owned by the Debtor individually. (Debtor's Exhibit 4, pp. 6–8).

In connection with the loan negotiations, on March 8, 2002, the Debtor signed a Personal Financial Statement for National Penn Bank. (Plaintiff's Exhibit 2; Debtor's Exhibit 3). On the Financial Statement, the Debtor represented that he owned the following assets with the following values:

Checking account—$36,000.00

Real estate for personal use, located in Warrington, Pennsylvania—$400,000.00

Real estate held for investment, located in Philadelphia, Pennsylvania—$1,200,000.00

100% ownership of A & F Corporation—$1,806,000.00

Personal effects—$100,000.00

Total assets—$3,542,000.00

The only liability listed on the Financial Statement consisted of the mortgage on the business property in the amount of $800,000.00. Consequently, according to the Financial Statement, the Debtor's net worth as of March 1, 2002, was $2,742,000.00. (Plaintiff's Exhibit 2; Doc. 22, p. 5).

Shortly after the closing of the loan arrangement, on March 25, 2002, the Debtor's corporate and personal accountant signed a letter that stated as follows:

To Whom It May Concern:

This letter is to inform you that Ambrozy Fasolak, social security number xxx–xx–1809, is no longer the president

of A & F Corporation, he is now retired. His son, Ambrose Fasolak, social security number xxx–xx–8819, has taken over the position of president.

(Debtor's Exhibit 11).

The Debtor received no income or salary from A & F Corporation in 2002. (Transcript, pp. 106, 155–56).

Later in 2002, it appears that the Debtor and his wife purchased a lot in Pasco County, Florida, and entered into a Building Agreement for the construction of a home on the lot. (Plaintiff's Exhibit 7). It further appears that construction of the home was financed by AmSouth Bank, and that a construction account was established at AmSouth. The AmSouth construction account was closed in April of 2003. (Plaintiffs Exhibit 24; Transcript, pp. 148–49).

On November 5, 2003, A & F Corporation filed a petition under Chapter 11 of the Bankruptcy Code in the Eastern District of Pennsylvania. (Plaintiff's Exhibit 4; Debtor's Exhibit 13). The petition was signed by the Debtor's son, Ambrose Fasolak, as Vice President of the corporation. The Chapter 11 case was not successful, and ultimately was converted to a case under Chapter 7 of the Bankruptcy Code. (Debtor's Exhibit 9, p. 14).

On December 1, 2003, it appears that the Debtor's wife, Marcinei Fasolak, sold the home where she and the Debtor had resided in Pennsylvania, and received a check in the amount of $194,814.07. (Plaintiffs Exhibit 10). Four days later, the sum of $364,780.80 was deposited into an account owned solely by the Debtor's wife at Bank of America. (Plaintiffs Exhibit 26).

On the same day that his wife sold the home, December 1, 2003, the Debtor filed a petition under Chapter 13 of the Bankruptcy Code in the Eastern District of Pennsylvania. (Plaintiff's Exhibit 3; Debtor's Exhibit 6). The following three parcels of real property are listed on the Schedule of Assets filed in the Chapter 13 case:

1. Business property located in Philadelphia, owned solely by the Debtor, with a value of $1,100,000.00, and encumbered by a lien in the amount of $765,000.00.

2. The Debtor's residence located in Perkasie. Pennsylvania, owned jointly by the Debtor and his wife, which was not ascribed a value, and which was not encumbered by any liens.

3. Residential property located on Miracle Lane in New Port Richey, Florida, owned jointly by the Debtor and his wife as tenants by the entireties, with a value of $300,000.00, and encumbered by a lien in the amount of $300,000.00.

On his Schedule of Personal Property in the Chapter 13 case, the Debtor listed home furnishings and clothing, owned jointly with his wife, with a total value of $6,000.00. On the Schedules, the Debtor also listed his stock in A & F Corporation with a current market value of "$0.00."

Although the Debtor signed the schedules, the attorney who represented him in the Chapter 13 case testified that the Debtor had moved to Florida by the time that the petition was filed, and that the attorney had never met the Debtor personally. Further, the attorney testified that the Debtor did not provide any financial information for the bankruptcy, and that all of the information and values in the schedules and related paperwork were furnished by the Debtor's son, Ambrose Fasolak. (Debtor's Exhibit 7, pp. 9–10, 14, 18; Transcript, p. 102).

On February 25, 2004, while the chapter 13 case was pending, the Debtor's wife transferred the sum of $200,000.00 from her Bank of America account to AmSouth

Bank to satisfy the mortgage on the home that the Debtor and his wife had purchased in Florida. (Plaintiff's Exhibits 24, 26).

On March 1, 2004, the Chapter 13 case was dismissed pursuant to the Debtor's request. (Debtor's Exhibit 6). According to the attorney who handled the case, the case was voluntarily dismissed so that the Debtor could entertain an offer to purchase the business property in Pennsylvania, with the objective of selling the property outside of the bankruptcy case. (Debtor's Exhibit 7, p. 14).

Approximately four months after the dismissal of the Chapter 13 case, on July 9, 2004, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Middle District of Florida. (Plaintiff's Exhibit 1; Debtor's Exhibit 19). The Debtor did not initially disclose his prior Chapter 13 case or the prior Chapter 11 case of A & F Corporation on the Chapter 7 petition.

On his Schedule of Assets, the Debtor listed his one-half interest in the real property located on Miracle Lane in New Port Richey, Florida. According to the Schedules, the Debtor's one-half interest in the real property was valued at $180,000.00, and the property was not encumbered by any liens. The property is the Debtor's residence. On the Schedules, the Debtor also listed personal property consisting of cash, one checking account at Madison Bank containing $20.00, household goods, books and pictures, clothing, and two guns, with a total value of $1,705.00.

On his Statement of Financial Affairs, the Debtor stated that his income in 2003 and 2004 consisted only of social security income. He also disclosed that he held an interest in A & F Corporation beginning in 1970 and ending in 2002.

On October 18, 2004, the Debtor filed an Amended Voluntary Petition. (Main Case, Doc. 14). On the Amended Petition, the Debtor disclosed the prior filing of his Chapter 13 case in Pennsylvania.

Also on October 18, 2004, the Debtor filed an Amendment to Schedules A, B, D and F. (Main Case, Doc. 15). On the Amendment to Schedule A, the Debtor added certain real property located on Edgemont Avenue in Philadelphia, Pennsylvania, with a value of $1,000,000.00, and a scheduled mortgage in the amount of $1,715,878.00. On the Amendment to Schedule B, the Debtor added his 100% ownership interest in A & F Corporation, which he valued at $1.00. The Schedule of Creditors was amended to add the Plaintiff as a secured creditor on Schedule D, and to delete the Plaintiff as an unsecured creditor from Schedule F.

Almost two years later, on September 26, 2006, the Debtor filed an Amendment to his Statement of Financial Affairs. (Main Case, Doc. 66). The primary purpose of the Amendment was to add the Debtor's business income in 2003 in the amount of $18,600.00, and his year-to-date business income in 2004 in the amount of $3,000.00. The income was received from A & F Corporation as compensation for the Debtor's services as a consultant. (Transcript, pp. 106, 154–55, 157–58).

Finally, on September 26, 2006, the Debtor filed a second Amended Chapter 7 Petition. (Main Case, Doc. 68). On the second Amended Petition, the Debtor disclosed the prior Chapter 11 case filed by A & F Corporation in Pennsylvania.

### Discussion

In its Complaint, the Plaintiff seeks the denial of the Debtor's discharge pursuant to § 727(a)(2), § 727(a)(3), § 727(a)(4), and § 727(a)(5) of the Bankruptcy Code.

■ According to the Federal Rules of Bankruptcy Procedure, "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection." F.R.Bankr.P. 4005. Specifically, the plaintiff must establish all of the required elements of its objection by a preponderance of the evidence. *In re Zwirn*, 2005 WL 1978510, at \*2(citing *In re Slater*, 318 B.R. 881, 886 (Bankr. M.D.Fla.2004)). Once the plaintiff meets its initial burden, the debtor must then present evidence that sufficiently explains why he should nevertheless receive a discharge. *In re Zwirn*, 2005 WL 1978510, at \*2(citing *In re Bratcher*, 289 B.R. 205, 217 (Bankr.M.D.Fla.2003)).

■ It is generally recognized that objections to discharge should be liberally construed in favor of the debtor and the debtor's fresh start, and against the objecting party. It is also recognized, however, that bankruptcy discharges should be reserved only for the "honest but unfortunate debtor." *In re Zwirn*, 2005 WL 1978510, at \*2(Citations omitted).

## I. Section 727(a)(2)

■ Count I of the Plaintiffs Complaint is based on § 727(a)(2) of the Bankruptcy Code. Section 727(a)(2) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2). To prevail under this section, a plaintiff must show "(i) a transfer or concealment of property of the debtor or estate, (ii) improper intent, and (iii) an improper act that occurred either during the one year preceding the filing or postpetition." *In re Matus*, 303 B.R. 660, 672 (Bankr.N.D.Ga.2004)(quoted in *In re Moeritz*, 317 B.R. 177, 182 (Bankr. M.D.Fla.2004)).

■ In this case, the Plaintiff's primary contention under § 727(a)(2) is that the Debtor concealed certain assets by transferring them to his wife for no consideration. The specific property transferred or concealed includes funds from the Debtor's account at Hatboro Federal Savings, funds received by the Debtor as income from A & F Corporation, the Debtor's equity in a vehicle, and the Debtor's interest in certain bank accounts held solely in his wife's name.

The Plaintiff satisfied its burden of proving that the Debtor transferred certain property to his wife. The record establishes, for example, that the Debtor transferred the sum of $8,600.00 from his account at Hatboro Federal Savings to an account owned solely by his wife at Sun-Trust on December 5, 2003. (Plaintiffs Exhibits 8 and 13; Transcript, pp. 45–46). The record also establishes that the paychecks received by the Debtor from A & F Corporation in 2003 and 2004 were deposited into his wife's account at SunTrust. (Plaintiff's Exhibit 8; Transcript, pp. 42–25). Finally, the record establishes that "shortly prior to filing bankruptcy," the Debtor traded in a Mercury Grand Marquis that was titled in his name, in exchange for a 2002 GMC pickup truck that

was titled in his wife's name, free and clear of any liens. (Transcript, pp. 183–84).

The transactions described above were not disclosed on the Schedules or Statement of Financial Affairs filed in the Debtor's Chapter 7 case.

The most troublesome aspect of the Plaintiff's allegations under § 727(a)(2), however, relates to the Debtor's interest in certain bank accounts held solely in his wife's name. The only account listed on the Debtor's Schedules is a checking account at Madison Bank, now Whitney National Bank, containing the sum of $20.00. The account was opened on February 25, 2004, with the sum of $3,400.00, never contained more than $8,000.00, actually contained only $237.00 when the Debtor's Chapter 7 petition was filed, and has contained only minimal amounts since the filing of the petition. (Plaintiff's Exhibit 25).

In November or December of 2003, on the other hand, an account was opened at the Bank of America in the name of the Debtor's wife, Marcinei Fasolak. (Plaintiff's Exhibit 26). The sum of $364,780.80 was deposited into the account on December 4, 2003, approximately seven months before the Debtor's bankruptcy petition was filed. The deposit apparently represents the proceeds, at least in part, from the sale of the home where the Debtor and his wife had lived in Pennsylvania. On February 25, 2004, the sum of $200,000.00 was paid to AmSouth Bank from the account to satisfy the mortgage on the home in Florida that is owned jointly by the Debtor and his wife. (Plaintiffs Exhibits 24, 26). As of June 9, 2004, the date on which the Debtor filed his bankruptcy petition, the Debtor's wife's Bank of America account contained the sum of $116,396.73.

Further, the Debtor's wife also opened a checking account at SunTrust on December 5, 2003, one day after the substantial deposit into her Bank of America account, and approximately seven months before the Debtor's Chapter 7 petition was filed. (Plaintiffs Exhibit 8). The SunTrust account was initially funded by the transfer of $8,600.00 from an account owned by the Debtor at Hatboro Federal Savings. The Debtor's wife's SunTrust account contained $9,226.03 as of July 15, 2004, the week after the Debtor's bankruptcy petition was filed.

The documentary evidence and testimony raises an inference that the Debtor engaged in a pattern of conduct whereby he systematically transferred virtually all of his wealth to his wife over a period of time prior to the filing of his Chapter 7 case. The evidence establishes, for example, that the Debtor owned and operated a successful business in Pennsylvania for more than thirty years. In fact, the Debtor signed a Financial Statement in 2002 in which he claimed that his net worth exceeded $2.5 million. (Plaintiffs Exhibit 2). On his bankruptcy schedules two years later, however, the only assets listed by the Debtor consisted of the home in New Port Richey owned jointly with his wife, and personal property with a total value of only $1,705.00.

During the year preceding the filing of the Chapter 7 petition, on the other hand, the Debtor's wife opened bank accounts that were titled solely in her name, which initially contained more than $360,000.00, and which contained an aggregate amount of approximately $125,000.00 on the petition date. Further, it appears that the Debtor receives a benefit from his wife's bank accounts, since the funds in one account were used to satisfy the mortgage on the Debtor's home in Florida, and since Marcinei Fasolak testified that she uses her accounts, at least in part, to pay the household expenses for the Debtor and his family. (Transcript, pp. 130, 133).

Despite the inferences that may be drawn from the evidence, however, the Court finds that the preponderance of the evidence does not establish that the Debtor transferred or concealed any assets with the actual intent to hinder, delay, or defraud a creditor.

It does not sufficiently establish, for example, that the funds in Marcinei Fasolak's Bank of America account originally belonged to the Debtor. Marcinei Fasolak indicated that a portion of the funds may represent a settlement or child support payments stemming from her previous marriage, and therefore constitute her separate property. (Transcript, p. 143). Additionally, a substantial deposit was made into the Bank of America account four days after Marcinei Fasolak sold a home in Pennsylvania in December of 2003. It appears from the record that the Pennsylvania home was titled solely in Marcinei Fasolak's name at the time that it was sold. The record does not clearly establish, however, whether the Debtor had ever owned an interest in the home and, if so, the date and circumstances under which he conveyed his interest to his wife.

As to the SunTrust account, Marcinei Fasolak testified that she uses the account to pay the bills for the Debtor's family. Marcinei Fasolak further testified that she handles the household finances because the Debtor is not a capable money manager. (Transcript, pp. 131–32).

Marcinei Fasolak's testimony regarding the Debtor's current financial ability is credible given other evidence in the case. The Debtor is seventy-two years old, and retired from his business. On March 25, 2002, the Debtor's accountant wrote a letter to any interested parties that reflected the Debtor's retirement. (Debtor's Exhibit 11). The Debtor's son testified that the Debtor retired because he was tired, wasn't feeling well at times, and was becoming increasingly forgetful. (Transcript, p. 100).

The evidence further indicates that the Debtor may have partially withdrawn from matters involving his personal finances at the same time that he retired from A & F Corporation. The Debtor did not furnish any of his personal financial information in connection with his Chapter 13 case in 2003, for example, but instead referred all questions to his son. (Transcript, pp. 102, 166; Debtor's Exhibit 7, pp. 9–10, 14, 23). Additionally, the Debtor testified that the GMC truck was titled in his wife's name because of his age and insurance considerations. (Transcript, p. 188).

In conclusion, the Court finds that the Debtor's discharge should not be denied under § 727(a)(2) of the Bankruptcy Code. It is clear that certain transfers were made from the Debtor to his wife prior to the petition date. The evidence does not establish, however, that specific, substantial assets of the Debtor were transferred into his wife's SunTrust or Bank of America accounts as part of a scheme to remove the assets from the reach of creditors. *In re Floyd*, 322 B.R. at 212. Specifically, the evidence does not show by a preponderance that the transfers were made with any improper or fraudulent intent. On the contrary, it appears equally likely from the evidence that the transfers were made in connection with the Debtor's withdrawal from both his business interests and his personal financial affairs.

## II. Section 727(a)(3)

 Count II of the Plaintiff's Complaint is based on § 727(a)(3) of the Bankruptcy Code. Section 727(a)(3) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). Under § 727(a)(3), the focus is "on the debtor's presentation of an accurate and complete account of his financial affairs." *In re Herbert,* 304 B.R. 67, 75 (Bankr.E.D.N.Y.2004)(quoted in *In re Floyd,* 322 B.R. 205, 213 (Bankr. M.D.Fla.2005)). The plaintiff must establish "(1) either that the debtor failed to keep or preserve any recorded information, or that he destroyed, mutilated, falsified, or concealed recorded information, and (2) that it is impossible to ascertain the financial condition of the debtor as a result of the debtor's conduct." *In re Floyd,* 322 B.R. at 213(citing *In re Liu,* 288 B.R. 155, 161 (Bankr.N.D.Ga.2002)).

■ In this case, the Court has reviewed the Plaintiff's Complaint, Pretrial Statement, evidence, and closing argument, and finds that the Plaintiff has not identified the specific records that it claims are missing.

Marcinei Fasolak testified that she produced all of the records that the Plaintiff requested from her. (Transcript, pp. 133–34). The Debtor testified that the Plaintiff did not require him to produce any documents, and that his wife furnished all of the records that were requested from her. (Debtor's Exhibit 21; Transcript, pp. 152–53). To the extent that the Plaintiff was seeking the business records of A & F Corporation, it appears that the records were left on the premises when the corporation's bankruptcy case was converted to

a case under Chapter 7. (Transcript, p. 110).

The Plaintiff did not establish that the Debtor failed to keep or preserve any specific recorded information within the meaning of § 727(a)(3) of the Bankruptcy Code.

### III. Section 727(a)(4)

■ Count III of the Plaintiff's Complaint is based on § 727(a)(4)(A) of the Bankruptcy Code. Section 727(a)(4)(A) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4). To prevail under § 727(a)(4)(A), a plaintiff must show that "(1) the debtor made a statement under oath; (2) the statement was false; (3) debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; (5) the statement related materially to the bankruptcy case." *In re Guajardo,* 215 B.R. 739, 741 (Bankr.W.D.Ark.1997)(quoted in *In re Floyd,* 322 B.R. at 214).

■ The Debtor acknowledges that various errors or inaccuracies appeared in his original Chapter 7 Schedules and Statement of Financial Affairs.

1. The Debtor did not initially disclose the filing of his prior Chapter 13 case, or the filing of A & F Corporation's Chapter 11 case in Pennsylvania. The petition was subsequently amended to add the prior bankruptcy cases. (Main Case, Docs. 14, 68).

2. The Debtor did not initially disclose his stock interest in A & F Corpo-

ration on his Schedule of Personal Property, although he described the business in response to Question Number 18 on his Statement of Financial Affairs. The Debtor's Schedule of Personal Property was subsequently amended to add the stock, which he valued at $1.00. (Main Case, Doc. 15).

3. The Debtor did not initially disclose on his Statement of Financial Affairs that he had received income from A & F Corporation in 2003 and 2004. The Statement of Financial Affairs was subsequently amended to add the income. (Main Case, Doc. 66).

The Plaintiff contends that the Debtor also made the following false oaths in connection with this case:

1. The Debtor testified at a deposition that he had not closed any bank accounts, other than certain accounts in Pennsylvania, within two years before the petition date (Plaintiffs Exhibit 5, pp. 74–75), when in fact he had closed the account at AmSouth during that time period.

2. The Debtor did not disclose certain transfers to his wife on his Statement of Financial Affairs.

3. The Debtor represented on his Statement of Financial Affairs that his interest in A & F Corporation terminated in 2002, when in fact he maintained an interest until 2004.

Clearly, the Debtor has made inaccurate statements in this bankruptcy case. The Court has considered the entire record presented at trial, however, and finds that the false statements were not made with the intent to deceive the Trustee or the Debtor's creditors.

Although the Debtor failed to disclose his stock ownership in A & F Corporation as an asset on Schedule B, the interest was sufficiently disclosed on his Statement of Financial Affairs. Further, it appears that the corporation was involved in a failed Chapter 11 or Chapter 7 bankruptcy case at the time that the Debtor's individual Chapter 7 petition was filed.

With respect to his income from A & F Corporation in 2003 and 2004, it appears that the payments represented compensation for consulting services requested by his son. The Debtor had retired from A & F Corporation in 2002, and returned on a limited basis only to assist his son. (Transcript, pp. 154–55). The amount received in 2003 totaled $18,600, and the amount received in 2004 totaled $3,000.00. The Court can conceive of no advantage to be gained by the Debtor in intentionally concealing the payments.

As to the AmSouth account, the Debtor testified that he simply forgot about it during the deposition. (Transcript, p. 149). The account was a relatively short-term account opened for the limited purpose of enabling the contractor to receive its draws during the construction of the Debtor's home, and was closed when the construction was complete.

As to the transfers to his wife of $8,600.00 in December of 2003, and of the paychecks from A & F Corporation in 2003 and 2004, it appears that the transferred funds were viewed primarily as household funds which were ultimately used to pay the household's expenses. (Transcript, pp. 158–60).

Finally, the Plaintiff focused much of its presentation on whether the Debtor terminated his interest in A & F Corporation in 2002, as stated in the Statement of Financial Affairs, or in 2004, when the business actually ceased. The Court finds that the Debtor genuinely considers his interest to have terminated in 2002, and therefore did not believe the statement on his bankruptcy paperwork to be false. Further, regardless of its truth or falsity, the Court

finds that the statement is immaterial for purposes of the Debtor's bankruptcy estate.

■ As a general rule, of course, multiple inaccuracies in a debtor's schedules may indicate the debtor's fraudulent intent or. at a minimum, the debtor's cavalier disregard for the truth. *In re Unger*, 333 B.R. 461, 468 (Bankr.M.D.Fla.2005).

In this case, however, the Court has evaluated the testimony of the Debtor and his wife at trial, and finds that the errors on the schedules were not intentional, but were instead simply the result of mistake or misunderstanding, The Court cannot find that the inaccuracies were designed to deceive the Trustee or the creditors of the estate.

### IV. Section 727(a)(5)

■ Count IV of the Plaintiffs Complaint is based on § 727(a)(5) of the Bankruptcy Code. Section 727(a)(5) provides:

**11 USC § 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—

. . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727(a)(5). For a debtor's discharge to be denied under § 727(a)(5), a plaintiff must "establish that the debtor at one time owned a substantial identifiable asset, not too remote in time to the date of the commencement of the case; that on the date of filing the voluntary petition the debtor no longer had the particular asset." *In re Hahn*, 362 B.R. 542, 548–49 (Bankr.S.D.Fla.2007)(quoting *In re Bernstein*, 78 B.R. 619, 622 (S.D.Fla.1987)). If the party objecting to the discharge estab-

lishes the basis for its objection, then the burden shifts to the debtor to "explain satisfactorily the loss." *In re Hawley*, 51 F.3d 246, 249 (11th Cir.1995)(cited in *In re Hahn*, 362 B.R. at 548–49).

■ It appears that the Plaintiff's contentions under § 727(a)(5) stem from the Financial Statement signed by the Debtor on March 8, 2002. (Plaintiffs Exhibit 2; Debtor's Exhibit 3). According to the Financial Statement, the Debtor had a net worth of $2,742,000.00 as of March 1, 2002. The assets included on the Financial Statement include a checking account containing $36,000.00, the stock interest in A & F Corporation valued at $1,806,000.00, and personal effects valued at $100,000.00.

The evidence regarding the preparation of the Financial Statement is in conflict. The Debtor testified that the loan representative at National Penn Bank completed the Financial Statement and supplied the values, in some instances based on appraisals that were in his possession. (Transcript, pp. 170–73). The representative of the Bank, on the other hand, could not recall completing the document, but stated that the normal practice would be for the information to be furnished by the borrower. (Debtor's Exhibit 4, pp. 11–13).

Regardless of the manner in which the Financial Statement was generated, however, the Court finds that it does not form a predicate for denial of the Debtor's discharge under § 727(a)(5). Specifically, the Plaintiff has not established that the Debtor owned any specific property in 2002, as reflected on the Financial Statement, and that the disposition of the property is unexplained in the Debtor's bankruptcy case.

A significant asset listed on the Financial Statement, for example, consists of the Debtor's interest in A & F Corporation valued at more than $1.8 million. It is

clear, however, that A & F Corporation was liquidated in a Chapter 7 case, and the Plaintiff was the primary lienholder on the business premises.

Another significant asset on the Financial Statement consists of "personal effects" valued at $100,000.00. With respect to the personal effects, however, the Financial Statement did not include any type of breakdown or itemization of the particular items that were declared to be worth the amount stated. Consequently, the Court is unable to determine that the Debtor owned any specific item of personal property in 2002, which was missing or unexplained as of the petition date.

The evidence does not satisfy the Plaintiff's burden of proof under § 727(a)(5) of the Bankruptcy Code.

### Conclusion

The Plaintiff commenced this adversary proceeding by filing a Complaint to Deny the Debtor's Discharge. The Court has considered the entire record in this proceeding, and finds that the Plaintiff did not establish that the Debtor fraudulently transferred or concealed property within the meaning of § 727(a)(2), that the Debtor failed to keep or preserve adequate financial records within the meaning of § 727(a)(3), that the Debtor knowingly and fraudulently made any false oaths within the meaning of § 727(a)(4), or that the Debtor failed to explain satisfactorily a loss of assets within the meaning of § 727(a)(5) of the Bankruptcy Code. Consequently, a Final Judgment should be entered in favor of the Debtor, and against the Plaintiff, on all counts of the Complaint.

Accordingly:

**IT IS ORDERED** that:

1. Final Judgment shall be entered in favor of the Debtor, Ambrozy Jerry Fasolak, and against the Plaintiff, D.A.N. Joint Venture III, L.P., on the Plaintiff's Complaint to Deny Discharge.

2. A Discharge of Debtor shall be entered in the Debtor's Chapter 7 case.

3. A separate Final Judgment shall be entered consistent with this Opinion.